In re Anthony CIAVARELLA, Debtor.

Anthony RUSSO, Plaintiff,

v.

Anthony CIAVARELLA, Queenie M. Behrman, Gertrude Groden and Jericho Management, Defendants.

Anthony CIAVARELLA, Plaintiff,

v.

Anthony RUSSO, Defendant.

Bankruptcy No. 82 B 20317.
Adv. Nos. 83 ADV 6018, 82 ADV 6282.

United States Bankruptcy Court,
S.D. New York.

March 30, 1983.

Barr & Faerber, Spring Valley, N.Y., for Anthony Ciavarella.

Weiss & Campise, New York City, for Anthony Russo.

Stern & Peshkin, P.C., New York City, for Groden, Behrman and Jericho Management.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff, a judgment creditor in this Chapter 13 case, seeks to avoid certain pay-

ments made by the debtor to two other creditors on the ground that they are voidable preferences under Code § 547(b), or that they are unauthorized postpetition transfers under Code § 549. The debtor has commenced an independent adversary proceeding to avoid as preferential two judgments obtained against him by the plaintiff one month before the Chapter 13 case was commenced. Alternatively, the debtor seeks to avoid the plaintiff's judgments pursuant to Code § 522(f) to the extent that the judgments impair the debtor's homestead exemption. Both adversary proceedings will be addressed collectively.

## FINDINGS OF FACT

1. On May 26, 1982, the debtor, Anthony Ciavarella, filed with this court his petition for an adjustment of debts as an individual with regular income in accordance with Chapter 13 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 1301 et seq.

2. The debtor is the owner of fifty percent of the common stock of Bogey Service Corporation ("Bogey") and is employed by Bogey as a taxi driver. The other fifty percent of the corporation is owned by one Simon Perrone, who is also employed by Bogey as a taxi driver.

3. The assets of Bogey consist of two taxi cabs currently operated by the debtor and Perrone, two New York City taxi medallions and two taxi meters.

4. The parties agree that the assets of Bogey, namely the two taxi cabs, the two taxi medallions and the two taxi meters, are worth $80,000. These assets are subject to a perfected security interest in favor of Gertrude Groden and Queenie M. Behrman, who made a loan to the debtor and Perrone to enable them to purchase Bogey and its assets. The unpaid balance of the loan amounts to approximately $72,000.

5. The debtor and Perrone also pledged all of their common stock of Bogey with Gertrude Groden and Queenie M. Behrman as additional security for the repayment of the $72,000 obligation. Hence, the secured creditors are collateralized by all of the assets of Bogey, valued at $80,000, and hold in pledge all of Bogey's stock, half of which represents the debtor's interest in the corporation.

6. Within ninety days of the filing of the Chapter 13 petition, the debtor continued his monthly loan repayments to Gertrude Groden and Queenie M. Behrman at the rate of $597.21 per month, for a total of $1,791.63.

7. The debtor's loan repayments of $597.21 per month have also been made after the filing of the Chapter 13 petition on May 26, 1982 and continue to be made by him in order to ensure that the secured creditors will not seek to foreclose on the corporate assets and prevent him from earning a living as a taxi cab driver.

8. The debtor's loan repayments to Gertrude Groden and Queenie M. Behrman are the subject of the plaintiff's preference action against these two individuals. The payments were made from earnings of the debtor and not from corporate assets. The payments were made to Jericho Management, as agent for the secured creditors.

9. On or about April 9, 1982, one month before the commencement of this Chapter 13 case on May 26, 1982, the plaintiff, Anthony Russo, entered two judgments against the debtor for antecedent debts; one judgment was obtained in the sum of $25,040.62; the other judgment was for $5,800.50, for a total of $30,841.12. These judgments were entered as judicial liens against the debtor's real estate in Pearl River, Rockland County, New York.

10. The plaintiff did not successfully rebut the presumption arising under Code § 547(f) that the debtor was insolvent on and during the ninety days immediately preceding the date of the filing of the petition on May 26, 1982. Moreover, the effect of the judgment lien was to enable the judgment creditor to receive more than he would have received as a distribution in a liquidation under Chapter 7 of the Bankruptcy Code.

11. The debtor and his wife, as tenants by the entirety, own a one family residence located in Pearl River, Rockland County,

New York. The evidence at the trial established that the gross market value of the house is approximately $89,000 and that the net equity interest of the debtor and his wife, after deducting for three mortgage liens, amounts to $23,883.37.

12. In accordance with the New York State Homestead exemption, pursuant to New York CPLR § 5206 the debtor would have been able to claim a homestead exemption of $10,000 in the net equity in his one family residence, except for the fact that the plaintiff's $30,841.12 judicial lien impairs his exemption.

## DISCUSSION

The holders of secured claims (i.e., Gertrude Groden and Queenie M. Behrman) who receive repayment from a debtor during the proscribed ninety day period under Code § 547(b) do not offend the avoidable preference rule because such creditors receive no more than would have been distributed in a Chapter 7 liquidation, where holders of secured claims may look to their collateral for realization of their claims. *In re Castillo,* 7 B.R. 135 (Bkrtcy.S.D.N.Y. 1980); *In re Hale,* 15 B.R. 565 (Bkrtcy.S.D. Ohio 1981); *In re P.D.Q. Copy Center, Inc.,* 26 B.R. 77 (Bkrtcy.S.D.N.Y.1982). Nevertheless, this substantive point need not be reached in this case because consideration must first be given to the procedural issue involving the plaintiff's standing to seek avoidance of the payments in question.

Code § 103(a) makes Chapters 1, 3, and 5 of title 11 U.S.C. applicable under Chapter 13. Chapter 5 contains the relevant avoiding powers sought to be exercised by the plaintiff in this case. Preferential transfers may be avoided under Code § 547(b), which provides that "*the trustee* may avoid any transfer of property of the debtor" (emphasis added) that satisfies the five elements comprising avoidable transfers. Similarly, Code § 549(a) states that "*the trustee* may avoid a transfer of property of the estate" (emphasis added) if it is an unauthorized postpetition transaction proscribed thereunder. Thus, a Chapter 13 creditor is not authorized to exercise the avoiding powers prescribed in Code § 547(b) or Code § 549(a). If creditors in a Chapter 13 case who received preferential or avoidable transfers were answerable to the other creditors in the case, so that Chapter 13 creditors might shoot it out against each other while the Chapter 13 debtor stood by passively without having a choice in the matter, the net result could be the demise of the Chapter 13 case. Therefore, the judgment creditor's complaint to avoid an alleged preference paid to another creditor is dismissed.

To stop here with a dismissal of the complaint for lack of standing on the plaintiff's part would be a disservice to the parties if the plaintiff hereafter were able to enlist the Chapter 13 trustee to assert the same causes of action. A ruling that a creditor in a Chapter 13 case may not exercise avoiding powers does not imply that a Chapter 13 trustee may exercise such powers over the objections of an unwilling Chapter 13 debtor.

A Chapter 13 case is unlike a reorganization case under Chapter 11 or a liquidation case under Chapter 7 because of the unique nature of Chapter 13, where the debtor is given broad authority and status to effect a rehabilitation. Chapter 13 is entirely voluntary in nature. A debtor cannot be thrown involuntarily into a Chapter 13 case as can occur under either Chapter 7 or Chapter 11. A Chapter 13 trustee is appointed to act in a limited fashion. He or she serves an administrative function, evaluating proposed plans to ensure their compliance with the statutory provisions prior to recommending any plans for confirmation. The debtor remains in control of the assets. In a Chapter 7 case, the appointed trustee steps into the debtor's shoes, taking control of the debtor's assets and seeing that every effort is made to enhance the estate for full distribution to the creditors. In Chapter 11 cases, reorganization is the theme, although a complete liquidation may occur pursuant to Code § 1123(b)(4) as part of the reorganization plan. The debtor in possession in a Chapter 11 case is given authority under Code § 1107 to exercise the

powers of a trustee unless a trustee is appointed for grounds specified in Code § 1104. However, a trustee is always appointed in a Chapter 13 case, even though rehabilitation rather than liquidation is the goal.

The debtor is given broader benefits than under Chapter 11. The Chapter 13 debtor's discharge under Code § 1328 wipes out all kinds of obligations, including fraud, willful and malicious injuries, education loans, fines and penalties. The only obligations not discharged are for alimony or maintenance and certain long term obligations under Code § 1322(b)(5). Unlike a Chapter 11 case, the creditors under Chapter 13 do not vote as to whether or not to accept or reject the debtor's plan. All that is required is that the plan must meet the so-called best interests rule under Code § 1325(a)(4) whereby the value of property to be distributed under the plan, as of its effective date, on account of each allowed unsecured claim may not be less than the amount that would be paid on such claim if the estate were liquidated under Chapter 7. Additionally, the plan must be proposed in good faith, as required under Code § 1325(a)(3), although good faith is not defined and its meaning has generated much litigation. See *Barnes v. Whelan*, 689 F.2d 193 (D.C.Cir.1982); *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982); *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982); *In re Rimgale*, 669 F.2d 426 (7th Cir.1982); *In re Estus*, 695 F.2d 311 (8th Cir.1982); *In re Goeb*, 675 F.2d 1386 (9th Cir.1981); *In re Terry*, 630 F.2d 634 (8th Cir.1980).

Unlike a Chapter 11 case, where the debtor may commit prepetition earnings and assets towards funding a plan of reorganization that must be accepted by the creditors, a Chapter 13 debtor's plan merely calls for the debtor to submit "all or such portion of *future earnings* or other *future income* of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan". (Emphasis added). See Code § 1322(a)(1). Thus, the debtor's past conduct, whether dischargeable or not under Chapter 7, and his prepetition income and assets are not material to the adminis-

tration of a Chapter 13 case. The creditors are only entitled to share in the debtor's future income. Even if preferences are recoverable in a Chapter 13 case, the creditors do not participate in the assets so recovered; their share of the distribution is derived solely from the debtor's future income and earnings.

■ The value of recoverable transfers in a Chapter 13 case has significance only in connection with the so-called best interests test under Code § 1325(a)(4) for confirmation purposes and has nothing to do with what the debtor voluntarily proposes to pay to unsecured creditors from future income under a Chapter 13 plan. It might be argued that an avoided preferential transfer would enhance the estate, thereby enabling the unsecure creditors to receive a greater distribution if the case had been filed under Chapter 7. If the unsecured creditors could receive more under Chapter 7 than under the proposed Chapter 13 plan, such plan could not be confirmed for lack of compliance with Code § 1325(a)(4). However, to the extent that the assets of the estate are increased by avoiding a preferential transfer, so too are the liabilities increased, because a claim arising from the recovery of property by reason of an avoided transfer is treated under Code § 502(h) as a prepetition claim. Similarly, an avoided postpetition transfer to a creditor simply increases the liabilities of the estate to the extent of the recovery. Thus, the increased liabilities balanced against the augmented estate assets might result in no increased net distribution for the unsecured creditor, even under a Chapter 7. Even though a transfer is avoided and a favored creditor is required to share in a Chapter 7 case on a pro rata basis, whereas the recovered payment was made on a dollar for dollar basis, it does not follow that the other creditors will receive any benefit as a result of the avoidance of the preferential transfer. Whether or not the other creditors might receive a slightly larger share in a Chapter 7 case at the expense of the favored creditor depends upon the amount of administration expenses, allowed priority claims and exemp-

tions. All too frequently preferential transfers are avoided in Chapter 7 cases without any dividends available for distribution to unsecured creditors; the recoveries having been consumed by the administration expenses, allowed priority claims and allowable exemptions. Therefore, the best interest test is not a sufficient justification for authorizing the application of avoidance powers to recapture past transfers in a Chapter 13 case which may result in no significant gain for the estate. A more reliable benefit for the creditors is the amount the debtor proposes to pay them under the plan from future income and earnings.

Moreover, the Chapter 13 trustee does not possess the full panoply of weapons available to a trustee under either Chapter 7 or Chapter 11. As indicated earlier, the Chapter 13 trustee's functions are restricted under Code § 1302 to administrative matters. Indeed, there is some dispute even as to whether or not a Chapter 13 trustee has standing to seek the conversion of a Chapter 13 case to a liquidation case under Chapter 7. Compare *In re Kutner*, 3 B.R. 422 (Bkrtcy.N.D.Tex.1980), interloc. appeal dism'd., 656 F.2d 1107 (5th Cir.1981), ruling lack of standing and *In re Kelsey*, 6 B.R. 114 (Bkrtcy.S.D.Tex.1980), sustaining the trustee's standing to convert. *In Kutner*, supra, the court characterized the Chapter 13 trustee as "more of a hybrid ombudsman". (p. 425). Some courts have barred a willing Chapter 13 debtor from suing to recover avoidable preferences on the ground that such a debtor lacks standing to sue and that the debtor should enlist the Chapter 13 trustee to bring the suit. *In re Toledo*, 17 B.R. 914 (D.C.P.R.1982); *In re Walls*, 17 B.R. 701 (Bkrtcy.S.D.W.Va.1982); *In re Carter*, 2 B.R. 321 (Bkrtcy.Colo.1980). Other courts have said that a Chapter 13 trustee may exercise avoiding powers for the estate. *In re Johnson*, 26 B.R. 381 (Bkrtcy.Colo.1982); *In re Colandrea*, 17 B.R. 568 (Bkrtcy.Md.1982). These courts overlook the limited administrative functions to which a Chapter 13 trustee is restricted and the broad latitude available to a Chapter 13 debtor. See *In re Cook*, 26 B.R. 187 (D.C.N.

M.1982). The Chapter 13 debtor alone controls whether or not he or she remains in Chapter 13 and how much of future income or earnings should be offered for distribution to the unsecured creditors via the "ombudsman" Chapter 13 trustee. This point was recognized by Judge Paskay who allowed a Chapter 13 debtor to exercise the avoiding powers under Code § 544 in *In re Hall*, 26 B.R. 10, 11 (Bkrtcy.M.D.Fla.1982), saying:

> In light of the language of the Bankruptcy Code itself and the legislative history of § 1303, this Court is unable to accept as persuasive either the arguments of Lanier or the holding of *Carter.* Code § 103(a) provides that with limited exception the general applicability, i.e., 1, 3, and 5 apply in a case under Chapters 7, 11, or 13 of this Title. Basically, by virtue of § 103(a) all provisions of Chapter 5, including § 544 are applicable and operative in a Chapter 13 case. It is equally clear that the Chapter 13 trustee whose practical role and function is much different that that of a Chapter 7 trustee, is not exclusively empowered to invoke the "strong arm" clause.

Not only is a Chapter 13 trustee "not exclusively empowered to invoke" the avoiding powers; the Chapter 13 trustee may not do so at all over the objections of a debtor who believes that a Chapter 13 plan may succeed only if certain transfers are not avoided. That the Chapter 13 plan may not achieve confirmation because the questioned transfers might offend the concept of good faith, as expressed in Code § 1325(a)(3), does not bolster the proposition that a Chapter 13 trustee may commence suits against third parties over the wishes of the Chapter 13 debtor.

In this case, the Chapter 13 debtor desires to continue to satisfy the secured claims with respect to the taxi cab he operates and the taxi medallion and meter secured in connection with such operation. The debtor's livelihood and future income depends upon his continued use of the secured collateral. The debtor's payments to the secured claim holders contribute towards the en-

hancement of his corporation's equity in the assets. Under the debtor's Chapter 13 plan, a portion of his future income will be paid to his unsecured creditors, including this plaintiff. In these circumstances, a dismissal of the judgment creditor's complaint to recover the payments to Gertrude Groden and Queenie M. Behrman as avoidable preferences and unauthorized postpetition transfers does not thereby open the door for the judgment creditor to request the Chapter 13 trustee to take up the cudgels for avoidance purposes.

### The Debtor's Preference Action

■ The debtor does not wish to recover any repayments from Gertrude Groden and Queenie M. Behrman because he believes that his Chapter 13 rehabilitation depends upon reducing their secured claims against the assets of his business. However, the judicial liens obtained by the plaintiff, Anthony Russo, against the debtor's home do not share such a favored status. Indeed, the debtor contends that Russo's judgment liens impair his homestead exemption and should be avoided pursuant to Code § 522(f) to the extent of such impairment. However, this point is academic because both judgment liens can be avoided as a preferential transfer under Code § 547(b).

Russo's judgment liens relate to antecedent debts and were obtained approximately one month before the Chapter 13 case was commenced. The judgment liens were obtained when the debtor was presumed insolvent pursuant to Code § 547(f). The enforcement of the judgment liens would enable Russo to receive more than he would receive in a Chapter 7 liquidation. All five elements for a voidable preference under Code § 547(b) were established.

■ The economic well being of the Chapter 13 debtor may depend upon which of his creditors must be paid and which need not be. A Chapter 13 debtor is authorized under Code § 1322(b)(1) to "designate a class or classes of unsecured claims ... but may not discriminate unfairly against any class so designated". Thus, the test as to the debtor's classification of unsecured creditors in a Chapter 13 plan is unfair discrimination in treatment. This does not mean that, apart from the classification of unsecured creditors in a Chapter 13 plan, the debtor must recover avoidable transfers from all recipients or not challenge any transferees at all. Chapter 13 was designed to serve as a flexible vehicle for the repayment of part or all of the allowed claims of a debtor's future earnings or income. See Senate Report No. 95–989, 95th Cong., 2d Sess. 141 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. The Chapter 13 debtor may decide which of his creditors should be challenged for having received avoidable transfers and which creditors should not be disturbed, provided that his plan was filed in good faith and meets the standards for confirmation under Code § 1325.

■ Having determined that Chapter 13 creditors have no standing to exercise avoiding powers, and having concluded that the Chapter 13 trustee's rights and duties are administrative in nature, it follows that the Chapter 13 debtor is the entity most appropriately stationed to reclaim those avoidable transfers whose recovery would further the debtor's rehabilitative interests under the Chapter 13 plan.

Therefore, the Chapter 13 debtor in this case may choose not to challenge the payments to Gertrude Groden and Queenie M. Behrman because these payments are regarded in the debtor's best interests, and may nevertheless, avoid the preferential transfer obtained by Anthony Russo when he entered the two judgment liens against the debtor the month before this Chapter 13 case was commenced.

### CONCLUSIONS OF LAW

1. Anthony Russo, a judgment creditor in this Chapter 13 case, has no standing to avoid any of the payments made by the debtor to Gertrude Groden and Queenie M. Behrman pursuant to their perfected secured claims against the assets of Bogey Service Corporation and the debtor's interest in the common stock of such corporation.

2. The complaint filed by Anthony Russo in the adversary proceeding commenced against creditors Gertrude Groden and Queenie M. Behrman to recover certain allegedly voidable transfers under Code § 547(b) and Code § 549(a) shall be dismissed.

3. The debtor has established by a preponderance of the evidence that Anthony Russo received a voidable preference in accordance with Code § 547(b) when he obtained two judgment liens on April 9, 1982 against the one family home owned by the debtor and his wife as tenants by the entirety, one month before the debtor filed his Chapter 13 petition with this court.

4. The judgment liens obtained by Anthony Russo against the debtor on April 9, 1982, shall be set aside as voidable preferences pursuant to Code § 547(b), with the result that the underlying claims shall be treated as prepetition unsecured claims in accordance with Code § 502(h).

SUBMIT ORDER ON NOTICE.