**In the Matter of Hugh Gordy LEE and Gloria Jan Lee.**

**Bankruptcy No. 81–00523A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Sept. 15, 1983.

Henry L. Young, Jr., Atlanta, Ga., for debtors.

John C. Weitnauer, Alston & Bird, Atlanta, Ga., for bank.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

This matter is before the Court on a motion to reconsider, alter and amend an order entered March 7, 1983. The March 7, 1983 order grew out of a previous motion of debtor and hearing which produced an order directed to the Citizens and Southern National Bank (the "Bank") to show cause why its unilateral action, upon receipt of knowledge of the filing of a Chapter 13 petition, to close the bank accounts of these Chapter 13 debtors and remit the bank account funds to the Chapter 13 trustee, had not violated the automatic stay. After hearing oral arguments and accepting written comments from both the Bank and the debtors, this Court concludes its prior order is essentially correct, but deems it appropriate to revise in part its prior order. Thus, the Court now vacates its previous order and substitutes the instant order.

This Court holds that a violation of the automatic stay, § 362(a)(3),[1] occurs when a bank, in response to the filing of a Chapter 13 petition by a depositor, unilaterally closes the depositor's account and transfers the funds in the depositor's account to the Chapter 13 trustee. Because the Court has no reason to believe that the Bank in the instant case acted in bad faith, but rather disregarded the automatic stay provision based on an erroneous legal construction of the Code, no sanctions against the Bank are deemed appropriate at this time.

In order to return the debtors to the status which existed at the time their Chapter 13 petition was filed prior to the unilateral closing of the accounts, however, this Court as a court of equity will require that the Bank, in the event the debtors apply to reopen their account, provide an account similar to the one closed. 11 U.S.C. § 105. This requirement imposed on the Bank is not to be interpreted to restrain the Bank in any way from its regular practices of monitoring, supervising, or closing the account in regard to any nonbankruptcy law. Thus, if the debtors, upon the opening of a bank account, subsequently violate some banking regulation which under normal procedures, not connected with the filing and pendency of a Chapter 13 case, would precipitate closing a bank account, then the Bank is free to apply such normal procedures and close any account of the debtors.

## FINDINGS OF FACT

1. On February 6, 1981, Hugh Gordy Lee and Gloria Jan Lee (the "debtors") filed a joint petition for relief under Chapter 13 of the Bankruptcy Code (Title 11 U.S.C.);

2. The proposed Chapter 13 "adjustments of debts" plan called for payments by the debtors of $100.00 each week to the trustee for payments of all debts of the debtors;

3. Prior to the filing of their Chapter 13 petition, the debtors maintained at least two depository accounts with the Bank which, on the date of the petition, reflected the following balances: Account Number 43365444 had a balance of $238.34, and Account Number 148282403 had a balance of $.01;

4. The debtors owed no money to the Bank and, accordingly, the Bank was not listed as a creditor and did not receive the order and notice mailed by the Clerk to all creditors;

5. The Bank regularly reviews the bankruptcy filing docket at the United States Bankruptcy Court, and on Monday, February 9, 1981, the Bank obtained actual knowledge that the debtors had filed a Chapter 13 petition;

6. In accordance with the Bank's regular practice on February 9, 1981, the Bank sent a mailgram to the debtors, the debtors' attorney, and the Chapter 13 standing trustee informing them that the Bankruptcy Code required the Bank to turn over to the trustee any monies in their bank accounts, and effective immediately the Bank would not honor checks, withdrawals, deposits, or other orders to pay, withdraw or transfer sums from their bank accounts;

7. Additionally, the Bank gave notice that it intended to close the accounts after five banking days from the date of the letter, and to forward the balance in the account to the trustee;

8. Thereafter, on February 18, 1981, in accordance with its previous notifications, the Bank transferred to the trustee the sum of $238.35;

9. At the time, the debtors had approximately $200.00 in outstanding checks written on their account with the Bank;

10. As a result of the Bank's action in freezing the account, its unilateral termination of the debtors' accounts, and transfer

1. Section 362—
    (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

    (3) any act to obtain possession of property of the estate or property from the estate;

of funds to the trustee, a number of checks were dishonored by the Bank;

11. Funding of the Chapter 13 plan submitted by the debtors did not include or require the money which the debtors had in their bank account at the time the petition was filed;

12. On February 13, 1981, the husband's employer was ordered to deduct and remit $100.00 per week earned by the debtor to fund the plan;

13. Because of the dishonored checks and loss of control over the bank account, the debtors suffered an unexpected financial crisis;

14. On the basis of this emergency and motion of the debtors, this Court ordered ex parte relief for the debtors, requiring the trustee to pay over to the debtors the sum which the Bank had transferred;

15. As a result of the above facts, the Court addressed *sua sponte* an order to the Bank to show cause why its conduct in unilaterally closing the accounts and terminating the Chapter 13 debtors' rights to control the money in their accounts was not a violation of the automatic stay.

16. After a hearing, the Court issued its order of March 7, 1983, which is now under review by the Bank's motion for reconsideration.

### DISCUSSION

The Bank asserts that its conduct did not violate the automatic stay because (1) none of the enumerated prohibitions in § 362(a) is applicable; (2) § 542(b) is a clear mandate for the conduct in question; (3) the principle of statutory construction which demands statutes be harmonized requires the Bank's action; (4) by not freezing, closing and terminating Debtors' accounts, the Bank might suffer multiple and inconsistent liabilities. For the reasons developed below, this Court finds none of the Bank's arguments persuasive.

### (1) § 362(a)(3) Is Applicable

The Bank argues that none of the prohibitions of § 362(a) is directly applicable.

For support the Bank cites legislative history of the Bankruptcy Reform Act of 1978 that emphasizes the purpose of § 362 to control creditor activity which might be offensive to a debtor's estate and Title 11 case, e.g., to give the debtor a "breathing spell from his creditors." ... "to prevent[ing] dismemberment of the debtors' assets by creditors." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340–42 (1977), U.S. Code Cong. & Admin.News 1978, 5787. In the instant Chapter 13 case, the Debtors owed no money to the Bank. The Bank was not a creditor. Its action of "paying the balance in their accounts to the trustee was not the *action of a creditor* designed to dismember the estate, and accordingly, should not be found to be in violation of the automatic stay" (emphasis supplied). (Brief filed April 28, 1981, p. 4).

■ The Court accepts the Bank's assertion that it is not a creditor of the Debtors. The Court also recognizes that much of the legislative history focused on the relief from *creditors* which the stay would provide. The Court disagrees, however, with the argument by the Bank that the stay applies only to creditors. The language of § 362(a) is not addressed solely to creditors, but rather to "entities." Section 101(14) defines entity to include "person, estate, trust, governmental unit." A "person" includes an "individual, partnership, and corporation ...." § 101(30). The combination of these two definitions brings the Bank within the ambit of those entities the stay was intended to reach.

The Bank next argues that § 362(a)(3) specifically cannot be applied to its conduct because the Bank made no attempt "to obtain possession." Although the Bank notes that "if anyone could be said to have 'possession' of the money in the accounts, it would be the Bank," it subsequently states that "possession" is not an appropriate concept in the present situation. Moreover, the Bank argues that it clearly did not obtain anything for its own benefit, and thus a finding that its conduct was a violation of the stay would be unjustified.

■ The last of these positions is most easily dispensed with. The language of the Code section does not require the entity to derive a benefit from its "act to obtain possession of property of the estate or of property from the estate." As noted previously in the opinion of March 7, 1983, and in the Bank's brief, the automatic stay is primarily concerned with temporary protection for the debtor. It is immaterial whether the conduct of the entity produced a benefit to that entity. The proper focus of the quoted provision is whether the debtor was subjected to a detriment by the entity's conduct rather than on whether the entity received a benefit. In the instant case, it is clear that the debtors experienced a severe detriment.

■ The Bank would prefer to characterize "possession" as inappropriate to the instant situation and thus entirely escape confronting the prohibition in § 362(a)(3). No authority is offered to support this characterization. Moreover, the applicability of the concept of "possession" to contractual relations between debtors and creditors has been recognized. See *In re Cahokia Downs, Inc.,* 5 B.R. 529 (Bkrtcy.S.D.Ill., 1980). (The 1978 Bankruptcy Code is "extremely broad" in giving the Bankruptcy Court jurisdiction and broad powers over contractual relations between debtors and creditors in order to encourage the debtor's rehabilitation. The *Cahokia* court found that insurance was a necessary protection and that cancellation of an insurance policy on which all premiums had been paid was an attempt to obtain a property interest of the estate which would come within the provisions of the automatic stay under § 362(a)(3), and thus be prohibited).

Finally, while the Bank prefers to call "possession" inappropriate, the Bank's admission that "if anyone could be said to have possession of the money in the accounts, it would be the Bank" more accurately reflects the facts. In fact, the Bank had "actual" possession, defined as "direct, physical control over a thing at a given time." *Black's Law Dictionary,* 1047 (rev. 5th ed. 1979). At the same time as the Bank had actual possession, the money was in the "constructive" possession of the debtors by depositors' contract with the Bank, e.g., the account was subject to the order of the depositors. *Id.* The debtors under the terms of the deposit had both the power and intention to exercise dominion or control over the fund through the Bank. In closing the accounts and transferring the debtors' funds to the Chapter 13 trustee, the Bank usurped the contractual dominion and control to which the debtors were entitled, i.e., their constructive possession. In so doing the Bank violated § 362(a)(3).

### (2) The Mandate of § 542(b)

The Bank urges this Court to recognize the applicability of § 542(b) to the circumstances. Under the Bank's interpretation of § 542(b) not only was the Bank acting within its rights when it closed the debtors' accounts and transferred their funds to the trustee, but a refusal to take these steps, once the Bank had knowledge of the debtors' Chapter 13 filing, would have been a violation of the Code.

■ Premise one of the Bank's argument is that the first three chapters of the Bankruptcy Code, Chapters 1, 3, and 5, apply to Chapters 7, 11, and 13. 11 U.S.C. § 103(a). As a general proposition, the Bank's premise is accurate. The provisions of Chapters 1, 3, 5, prima facie, are applicable to the operative Chapters 7, 11 and 13; they apply except where inconsistent with a specific provision of Chapters 7, 11, or 13. Once the philosophical and operative differences among Chapters 7, 11, and 13 are identified, it becomes apparent that all of the provisions of general Chapters 1, 3, and 5 cannot be applied with identical force to each of the Chapters 7, 11, and 13. *See In re Ciavarella,* 28 B.R. 823 (Bkrtcy.S.D.N.Y., 1983).

■ The Bank itself revealed at the April 14, 1981 hearing that, although it applied § 542(b) identically to Chapter 7 and 13 debtors, it treated differently a Chapter 11 debtor. In contrast to freezing and closing accounts and transferring funds to the trus-

tee of Chapter 7 and 13 debtors, the Bank continues to "honor[s] checks of a Chapter 11 debtor even after having knowledge that a bankruptcy petition has been filed." This discrepancy in treatment by the Bank refutes its own argument that § 542(b) mandates identical treatment for all debtors, requiring the Bank when it "owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, [that it] shall pay such debt to, or on the order of, the trustee . . .". The notion that § 542(b) mandates identical treatment of Chapter 7 and 13 debtors must be rejected.

Premise two of the Bank's identical treatment argument appears to follow from the fact that a trustee is immediately appointed in both a Chapter 7 and 13. Yet, the Code provides significant distinctions between these two chapters which prohibit identical treatment. In a Chapter 7 case, the purpose is liquidation of debtor's assets under the supervision and control of a Chapter 7 trustee. In a Chapter 13 case, the objective is rehabilitation of the debtor, to prevent liquidation of the debtor's estate by means of adjustment of debts through payments from future income, and a Chapter 13 trustee is used incidentally to achieve the objective.

To illustrate, the Chapter 7 trustee is charged with "taking control of the debtor's assets and seeing that every effort is made to enhance the estate for full distribution to the creditors." *In re Ciavarella,* 28 B.R. 823, 825 (Bkrtcy.S.D.N.Y., 1983). 11 U.S.C. § 704. All of the property of the estate is placed in the hands of the trustee initially, even that property which the debtor has the right to exempt.

In a Chapter 13 case "where the debtor is given broad authority and status to effect a rehabilitation", the trustee's role is quite different. *Ciavarella* at 825–27. The "Chapter 13 trustee is appointed to act in a limited fashion. He or she serves an administrative function, evaluating proposed plans to ensure their compliance with the statutory provisions prior to recommending any plans for confirmation. The debtor remains in control of the assets." *Id.* See also *In re Crotty,* 11 B.R. 507, 510 (N.D. Tex., 1981). Section 1306(b) alters the effect of § 542(b). The precise statutory language is: "Except as provided in a confirmed plan or order confirming a plan, *the debtor shall remain in possession* of all property of the estate." 11 U.S.C. § 1306(b). (Emphasis added).

The Bank in its brief pointed to the relationship between the Chapter 13 trustee and debtor as delineated in the Code. Of particular importance for comparing Chapter 7 and 13 is § 1302. Subsection (b)(1) expressly refers to the duties of a Chapter 7 trustee specified in § 704, subsections (2), (3), (4), (5), (6), and (8). Conspicuous because of its absence in this listing is § 704(1) which empowers the Chapter 7 trustee to "(1) collect and reduce to money the property of the estate for which such trustee serves, and close up such estate as expeditiously as is compatible with the best interests of parties in interest." Yet, to validate the Bank's interpretation of § 542(b) as applied to Chapter 13, "collecting" property of the estate for the best interests of the parties would be required. In the absence of the Code's directive to the trustee to collect the Chapter 13 estate and in the presence of an affirmative declaration that the Chapter 13 debtor is to remain in possession of the estate, the Bank's conduct in unilaterally closing the debtors' accounts and transferring the debtors' funds to the Chapter 13 trustee is a violation of the automatic stay.

### (3) Statutory Construction

The Bank would, nevertheless, have this Court conclude that no violation of the automatic stay occurred because the statutes in question can be harmonized. The Court recognizes that the prescription to harmonize is a legitimate principle of statutory construction. The principle lacks force, however, where provisions of the statute are in conflict. This Court disagrees with the Bank's conclusion that there is no conflict in the statutory directives.

Premise three of the Bank's argument assumes that because the Chapter 13 debtor and trustee may cooperate together the conflict that is present in the statutory language disappears, e.g., the trustee can return any property which he receives as a result of § 542(b), but in violation of § 1306(b), to the debtor. However, characterizing the relationship between the debtor and trustee as one of mutual cooperation does not nullify the conflict. The difference in function between a Chapter 7 and Chapter 13 trustee has been previously noted. The Code does not provide for an entity to transfer the Chapter 13 debtor's estate to a Chapter 13 trustee. The language provides: "debtors *shall remain in possession* of all property of the estate." (Emphasis supplied). To the extent that § 542(b) is read as requiring an entity who owes a debt to a Chapter 13 debtor to transfer unilaterally that debt to the Chapter 13 trustee, it is in conflict with § 1306(b) and the objectives of Chapter 13.

Besides theoretical conflict based in the statutory language, conflict is a likely result in the practical world. For a debtor the element of time is of critical importance in any transactions involving money. The instant case is no different. Current debts due were to be paid out of money in the debtors' checking account. Current and other upcoming bills required timely payments; wages earned by the debtors to fund the Chapter 13 plan were already being withheld. When the Bank eliminated the debtors access to their current funds, the Bank precipitated an unexpected financial emergency.

Timely relief for the debtors was vital. It required an ex parte order issued by this Court, releasing the funds which the Bank had unilaterally transferred to the trustee. The time and money spent correcting the Bank's conduct were costly to the debtors.

The practical reality of the daily world is that because a debtor who files a bankruptcy petition is already compromised, there is no quick procedure for the debtor to recover what he is entitled to maintain possession of, and the debtor's interest and the trustee's interest are not identical, actual conflict is assured. The existence of such conflict precludes the Bank's suggested harmonious interpretation.

There are two other important principles of statutory construction which also preclude the Bank from favoring § 542(b) at the expense of Chapter 13. The first distinguishes between the applicability of general and specific sections of a statute: "Where there is inescapable conflict between general terms or provisions of a statute and other terms or provisions therein of a specific nature, the specific will prevail and will be given effect over the general." Sands, C. Dallas, 2A *Statutes and Statutory Construction,* 57 (rev. 4th ed. of 3rd ed. of *Sutherland Statutory Construction,* 1973). See also *In re Lincoln,* 26 B.R. 14, 16 (Bkrtcy.W.D.Mich., 1982). Pursuant to this precept, the specific provisions of Chapter 13 should control the terms of the general chapters, including § 542(b).

The second statutory argument emphasizes attending to the context of the whole Act. "A section should not be read in isolation from the context of the whole Act, and that in fulfilling our responsibility in interpreting legislation, we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy." *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591–592, 7 L.Ed.2d 492 (1961), citing *Labor Board v. Lyon Oil Co.,* 352 U.S. 282, 288, 77 S.Ct. 330, 333, 1 L.Ed.2d 331 (1957); *Cherokee Intermarriage Cases,* 203 U.S. 76, 89, 27 S.Ct. 29, 34, 51 L.Ed. 96 (1906); *Panama Refining Co. v. Ryan,* 293 U.S. 388, 439, 55 S.Ct. 241, 256, 79 L.Ed. 446 (Cardozo, J., dissenting) (1935). As applicable to the instant case, this precept requires the recognition that Congress in enacting a rehabilitative chapter for individuals with regular income sought to encourage debtors to pay off accumulated debts with future earnings. H.R. 95–595, 95th Cong. 1st Sess., 118–21 (1977). Clearly, such a policy is thwarted when the Chapter 13 debtor's estate is removed from his possession and he is forced into unanticipated financial

trauma, even greater than when he initially filed.

*(4) Multiple And Inconsistent Liabilities*

The Bank's last argument is that if it did not close the debtors' accounts and transfer the debtors' funds to the trustee it would be open to multiple and inconsistent liabilities. The Bank points out that this problem arises because it has knowledge of the debtors' filing a bankruptcy petition. It's routine procedure of reviewing bankruptcy filings removes the protection of the safe harbor provision offered to those without knowledge. § 542(c). Thus, the Bank contends that if it follows the directions of the debtors to pay a third party by honoring the debtors' check, the Chapter 13 trustee might void the transfer and force the Bank to pay a second time.

 The Bank attempts to clarify the scenario by referring to § 549. Subsection (a) of § 549 allows a trustee to avoid a transfer of property of the estate that occurs after the commencement of a case if either of two circumstances are present: [(a)(2)(A)] the transfer may be avoided if it is authorized under §§ 303(f) or 542(c); or [(a)(2)(B)] the transfer may be avoided if it is not authorized under this title or by the Court. Section 303(f) and § 542(c) can be dismissed as not being applicable to the Bank's present concerns. The question is whether the language of § 549(a)(2)(B) would create double liability to the Bank. Could the trustee recover the amount the Bank paid at the debtors' instructions? The answer must be no. A Chapter 13 debtor is entitled to remain in possession of his estate, except as otherwise stated in a confirmation plan, or an order confirming a plan; this includes the control over and constructive possession of funds deposited in his bank account. The trustee is not in a position to argue against the Bank's conduct in maintaining actual possession of the debtors' funds or permitting the debtors to remain in constructive possession of them. The trustee would have no basis for avoiding the transfer as it is authorized under the provisions of the Code. The Bank's case for multiple and inconsistent liabilities is unconvincing. *See In re Ciavarella, supra.*

For the reasons set forth above, this Court finds that the Bank violated the automatic stay, § 362(a)(3). No sanctions against the Bank are to be imposed. This Court will require that the Bank, in the event the debtors apply to reopen their account, provide an account similar to the one closed.

It is so ORDERED.

A separate judgment will be prepared consistent with this opinion. Bankruptcy Rule 9021.