# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10458

United States Court of Appeals
Fifth Circuit

**FILED**

July 23, 2015

Lyle W. Cayce
Clerk

In the Matter of:  HARRY NEAL MCMILLAN,

> Debtor

_____

HARRY NEAL MCMILLAN,

> Appellant

v.

DONAL RAY SCHMIDT, JR.; THIMOTHY S. WAFFORD,

> Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:13-CV-807

Before DENNIS, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:*

This is an appeal of the district court's dismissal of Appellant Harry McMillan's motion for fees, costs, and damages arising from an improper

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 14-10458

petition for involuntary bankruptcy under 11 U.S.C. § 303. Thomas Aigner, a third party, entered into a Joint Prosecution Agreement with Appellees Donal Schmidt and Thimothy Wafford to petition McMillan for involuntary bankruptcy based on a default judgment McMillan owed Aigner. The bankruptcy court dismissed the petition because it determined that Aigner transferred a portion of his interest in the claim to Schmidt and Wafford with the intention of beginning an involuntary action against McMillan. McMillan sought fees, costs, and damages against Aigner, Schmidt and Wafford. The bankruptcy court denied McMillan's motion, and the district court affirmed as to Schmidt and Wafford.[1] McMillan appeals the decision.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Aigner filed an involuntary bankruptcy petition against McMillan under 11 U.S.C. § 303, seeking to enforce a default judgment of approximately three million dollars that Aigner obtained against McMillan in 1999. Though the judgment had gone dormant, Aigner revived it in 2011. On December 16, 2011, Aigner entered into a Joint Prosecution Agreement ("JPA" or "Agreement") with Appellees Schmidt and Wafford.

Schmidt and Wafford's relationship to McMillan is unrelated to Aigner's default judgment. Around 2008, McMillan consulted for Sun River, a company owning substantial mineral rights in New Mexico, in connection with its plan to become a publicly traded company. In exchange, McMillan received stock and warrants, and he became Sun River's largest shareholder. Some time later, Schmidt became the CEO and Wafford the CFO of Sun River. In December 2011, relations broke down between McMillan and Schmidt/Wafford.

---

[1] Before the district court affirmed, it granted a motion to dismiss with prejudice all claims against Aigner.

No. 14-10458

Shortly after relations soured between McMillan and the Appellees, Schmidt and Wafford entered into the JPA with Aigner. The Agreement grants Schmidt and Wafford a certain degree of control over Aigner's involuntary-bankruptcy petition. Pursuant to the Agreement, Aigner filed a petition for involuntary bankruptcy against McMillan on December 21, 2011. Only Aigner—and not Schmidt or Wafford—signed the petition. McMillan moved to dismiss the petition and counter-claimed for costs, fees, and actual and punitive damages under § 303(i).

After nine days of evidentiary hearings, the bankruptcy court dismissed Aigner's petition. *See Aigner v. McMillan*, No. 11-47029-7, 2013 WL 2445042, at \*7 (Bankr. N.D. Tex. June 4, 2013). It concluded that Aigner was disqualified to serve as a petitioner for involuntary bankruptcy because, via the Agreement with Schmidt and Wafford, Aigner acquired or transferred an interest in the claim "for the purpose of commencing an involuntary case" in violation of Bankruptcy Rule 1003(a). The bankruptcy court concluded, "[t]here can be no question but that the Agreement was executed and implemented for the purpose of commencing an involuntary case against McMillan." Therefore, Aigner, Schmidt, and Wafford were not qualified creditors to petition for involuntary bankruptcy under § 303.

In reaching this disposition, the bankruptcy court noted that "the Case is but another battle in an ongoing war between McMillan and . . . Sun River," and that it "was commenced principally at the ins[istence] of Sun River as a tactical measure in its disputes with McMillan." After examining the Agreement, the bankruptcy court concluded that "control over prosecution of the involuntary case against McMillan is largely ceded to Schmidt and Wafford," who "have the power under the Agreement to force and maintain prosecution of the Case." Finally, the court found that "Schmidt and Wafford

3

sought out [Aigner] with the goal of forcing McMillan into bankruptcy." Sun River, it concluded, is "the true prime mover for involuntary relief."

The bankruptcy court determined that Aigner filed the § 303 petition in good faith. Yet it noted in footnote twenty of the order: "This is not to say that Sun River, Schmidt, and Wafford did not act other than in good faith, but *they are not petitioners and are therefore not before the court.*" It is this last determination that McMillan appeals.

Reviewing the bankruptcy court's conclusions of law de novo and its factual findings for clear error, the district court affirmed, reaching two alternative resolutions. First, the district court held that as neither Schmidt nor Wafford was served with process in accordance with Bankruptcy Rule 7004(b)(1), "the bankruptcy court never had *in personam* jurisdiction over Schmidt and Wafford, because they had not appeared as parties in the proceeding below." Therefore, "absent compliance with Rule 7004(b)(1), entertaining McMillan's appeal would offend due process." Second, although the district court found it "unnecessary" to address the bankruptcy court's ruling that Schmidt and Wafford were not petitioners, and therefore performed no independent analysis of the legal question, it concluded that "the bankruptcy court did not commit reversible error in concluding that Schmidt and Wafford were not 'petitioners,' and in declining to award relief under Section 303(i) against them."

Before this Court, McMillan argues that (1) Schmidt and Wafford are "petitioners" within the meaning of § 303(i) and (2) the bankruptcy court may impose costs, fees, and damages on Schmidt and Wafford without McMillan having to commence an adversarial proceeding against the Appellees under Rule 7004(b)(1).

## II.    DISCUSSION

This Court has jurisdiction over McMillan's appeal of the district court's review of a bankruptcy court's final order under 28 U.S.C. § 158(d)(1). This Court reviews the district court's decision "by applying the same standard of review to the bankruptcy court's conclusions of law and findings of fact that the district court applied." *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005) (per curiam). "[C]onclusions of law are reviewed *de novo*, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed *de novo*." *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).

Section 303 of the Bankruptcy Code governs petitions for involuntary bankruptcy. "An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title" by an entity holding an undisputed, bona fide claim against the alleged debtor. 11 U.S.C. § 303(b). After the petition is filed, "a creditor holding an unsecured claim that is not contingent . . . may join in the petition with the same effect as if such joining creditor were *a petitioning creditor under subsection (b)* of this section." § 303(c) (emphasis added). Therefore, a "petitioning creditor" is an entity that files a petition under § 303(b) or one who joins the petition under § 303(c).

Rule 1003, using the word "petitioner" and not "petitioning creditor," imposes a limitation on involuntary bankruptcy: "An entity that has transferred or acquired a claim for the purpose of commencing a case for liquidation under chapter 7 or for reorganization under chapter 11 shall not be a qualified petitioner." Fed. R. Bankr. P. 1003(a). If an alleged debtor succeeds in getting the petition against him dismissed, then § 303(i) permits the alleged debtor to collect fees, costs, and damages from his petitioners:

> (i) If the court dismisses a petition under this section other than
> on consent of all petitioners and the debtor, and if the debtor

does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—
    (A) costs; or
    (B) a reasonable attorney's fee; or
(2) against any petitioner that filed the petition in bad faith, for—
    (A) any damages proximately caused by such filing; or
    (B) punitive damages.

Ordinarily, an alleged involuntary debtor may collect fees under § 303(i) by filing a motion with the bankruptcy court. *See* Fed. R. Bankr. P. 9014 ("In a contested matter . . . relief shall be requested by motion . . . ."). Bankruptcy procedure distinguishes a contested matter—such as a petition for involuntary bankruptcy—from an adversary proceeding. *See* Fed. R. Bankr. P. 7001 (explaining that "a proceeding to recover money or property" is an adversary proceeding); Fed. R. Bankr. P. 9014 advisory committee's note ("Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter.").

At issue in this appeal is whether McMillan may collect the fees authorized by § 303(i) from Schmidt and Wafford—who did not sign the original petition for involuntary bankruptcy—and whether he may do so without beginning an adversary proceeding.[2]

McMillan contends that he may recover fees and damages from Schmidt and Wafford because they are "petitioners" under § 303(i). Relying on *Rosenberg v. DVI Receivables, XIV, LLC* (*In re Rosenberg*), 471 B.R. 307 (Bankr. S.D. Fla. 2012), and *In re Oakley Custom Homes, Inc.*, 168 B.R. 232 (Bankr. D. Colo. 1994), McMillan argues that "petitioner" is a broader category than "petitioning creditor," and therefore that he may recover from people or

---

[2] Rule 7004 provides the requirements for service of process in an adversary proceeding, which begins with a summons.

entities that caused his involuntary petition to be filed. *Cf. In re Rosenberg*, 779 F.3d 1254, 1268–69 (11th Cir. 2015) (affirming the bankruptcy court's award of fees from an entity it concluded was the "de facto petitioning creditor" though not a signatory to the original involuntary petition). McMillan stresses Rule 1003 contemplates that entities other than "petitioning creditors" may be integral to filing a petition for involuntary bankruptcy, and he invites this Court to define "petitioner" with reference to state-law agency principles.

We make no pronouncement today on whether the meaning of "petitioner" may be broader than "petitioning creditor" under the bankruptcy code. Instead, we hold that only "petitioning creditors"—i.e., entities that file a petition under § 303(b) or join it under § 303(c)—are parties to the contested matter and therefore properly before the bankruptcy court on a motion for fees. *See DVI Receivables XIV, LLC v. Rosenberg*, 500 B.R. 174, 177 (S.D. Fla. 2013) (noting that the bankruptcy court "ordered Rosenberg to convert the Motion into an adversary complaint—or, in the alternative, to withdraw the Motion and file a new adversary complaint—so that the court could have jurisdiction over these additional parties" and that Rosenberg obliged).

Schmidt and Wafford were not signatories to the original involuntary petition; therefore, they are not parties to the contested matter, and McMillan must serve them with process to bring them within the jurisdiction of the bankruptcy court. Because he seeks to "recover money" from the Appellees, McMillan's action is properly brought as an adversary proceeding under Rule 7001.[3] We agree with the district court that McMillan must serve Schmidt and Wafford with a summons and a complaint in accordance with Bankruptcy Rule 7004(b)(1) to subject them to the jurisdiction of the bankruptcy court.

---

[3] *See, e.g., In re Dean*, 359 B.R. 218, 222 (Bankr. C.D. Ill. 2006) (collecting cases and noting that "[s]everal courts have held that if a party seeks recovery of damages . . . this falls within Rule 7001(1) and the matter should be brought as an adversary proceeding").

No. 14-10458

## III.  CONCLUSION

For the foregoing reason, we AFFIRM the district court's dismissal of McMillan's motion for fees.

No. 14-10458

JAMES L. DENNIS, Circuit Judge, dissenting:

This case presents difficult questions of bankruptcy law that do not lend themselves to easy answers. Respectfully, however, the majority's resolution of the case appears to me to be in tension with current bankruptcy court practice. For the reasons that follow, I respectfully dissent.

The present dispute stems from an involuntary bankruptcy petition filed against Harry McMillan (in bankruptcy parlance, the "alleged debtor") by Thomas Aigner (the "petitioning creditor"). Before filing the petition, Aigner entered into a contract with two others, Donal Schmidt and Thimothy Wafford, giving them sole authority to select bankruptcy counsel and control the prosecution of the case, even though they weren't joining it as petitioning creditors. The bankruptcy court, holding that this arrangement was impermissible (for reasons that are irrelevant to the present appeal and need not be elaborated upon here), dismissed the case.[1] McMillan sought attorney's fees, costs, and damages under 11 U.S.C. § 303(i)—which affords alleged debtors such relief upon dismissal of their involuntary bankruptcy cases—from Aigner, Schmidt, and Wafford.[2] McMillan later settled with Aigner, leaving only Schmidt and Wafford. McMillan sought the § 303(i) attorney's fees, costs, and damages from Schmidt and Wafford by serving them with a so-styled "motion" for relief. He did not serve them with summonses and a complaint.

---

[1] Aigner, Schmidt, and Wafford have not challenged the bankruptcy court's dismissal of the involuntary bankruptcy case, so for purposes of deciding this appeal I will assume that the dismissal was proper.

[2] Section 303(i) provides: "If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—(1) against the petitioners and in favor of the debtor for—(A) costs; or (B) a reasonable attorney's fee; or (2) against any petitioner that filed the petition in bad faith, for—(A) any damages proximately caused by such filing; or (B) punitive damages."

No. 14-10458

McMillan's demand for § 303(i) attorney's fees, costs, and damages from Schmidt from Wafford presents two issues. First, as a matter of procedure, did service of McMillan's motion adequately bring Schmidt and Wafford within the jurisdiction of the bankruptcy court to allow that court to assess attorney's fees, costs, and damages against them? If so, second, as matter of substantive law, does § 303(i) allow for such relief from persons, like Schmidt and Wafford, who did not join the involuntary bankruptcy petition as petitioning creditors but nevertheless caused the petition to be filed? The majority answers the first question in the negative and does not reach the second. I will address both questions in turn.

As to the first question, the majority holds that McMillan's service of a motion for damages on Schmidt and Wafford was inadequate to bring them into the jurisdiction of the bankruptcy court. *Ante*, at 7. The majority concludes that, in order for the bankruptcy court to exercise jurisdiction over Schmidt and Wafford, McMillan must begin an adversary proceeding against them, which requires service of summonses and a complaint rather than a motion. *Id*. Respectfully, this holding appears to me to be in tension with the current prevailing practice in bankruptcy courts, as I will explain.[3]

The bankruptcy rules create two potential avenues through which disputes may be resolved: (1) adversary proceedings, Fed. R. Bankr. P. 7001, and (2) contested matters, Fed. R. Bankr. P. 9014. Every dispute that arises

---

[3] I note for the sake of clarity that there is no dispute as to the method of service, which, here, was certified mail. Whether McMillan should have served Schmidt and Wafford with summonses and a complaint (as the majority holds) or a motion (as he did), certified mail was a proper method of service under the applicable rules. *See* FED. R. BANKR. P. 7004(b)(1); FED. R. BANKR. P. 9014(b); *In re Ballard*, 502 B.R. 311, 320-21 (Bankr. S.D. Ohio 2013) (noting that there are no differences between the permissible methods of service used to initiate adversary proceedings and contested matters); *In re Dean*, 359 B.R. 218, 221 (Bankr. C.D. Ill. 2006) (same).

in bankruptcy is resolved through one or the other.[4]  Pertinent here is that different documents are used to initiate adversary proceedings and contested matters.  An adversary proceeding is initiated with a summons and complaint. Fed. R. Bankr. P. 7004(a)(1) (incorporating Fed. R. Civ. P. 4(c)(1)).[5] A contested matter is initiated with a motion.  Fed. R. Bankr. P. 9014(a).[6]  Therefore, the question here is whether McMillan's demand for attorney's fees, costs, and damages under § 303(i) must be asserted in an adversary proceeding or as a contested matter.  If an adversary proceeding is the required vehicle for the dispute, as the majority holds, then McMillan erred when he served a motion rather than summonses and a complaint.  But if a contested matter is a proper vehicle, then McMillan followed the correct procedure when he served Schmidt and Wafford with a motion.

Bankruptcy Rule 7001 defines the types of disputes that must be asserted in adversary proceedings.  The subsection most relevant here is (1), which provides that adversary proceedings include (subject to certain exceptions inapposite here) "proceeding[s] to recover money or property."  It is certainly reasonable to hold, as the majority does, that a demand for attorney's fees, costs, and damages under § 303(i) seeks "to recover money" as that phrase is used in Rule 7001(1) and therefore requires an adversary proceeding.

---

[4] FED. R. BANKR. P. 9014 advisory comm. notes ("Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter."); *Matter of Zale Corp.*, 62 F.3d 746, 762 n.49 (5th Cir. 1995) ("Contested matters are those issues for which Rule 7001 does not require an adversary proceeding."); *Ballard*, 502 B.R. at 320 ("There are two different types of litigated proceedings within bankruptcy cases: adversary proceedings and contested matters.").

[5] *See also Ballard*, 502 B.R. at 320 ("An adversary proceeding is commenced through the filing of a complaint and requires the service of the complaint with a summons.").

[6] *See also Dean*, 359 B.R. at 222 ("The main difference between an adversary proceeding and a contested matter is that an adversary proceeding must be commenced by the filing and service of a complaint that meets specific notice and formatting requirements and which must be accompanied by a summons directed to the named defendant.").

No. 14-10458

However, it appears that the majority of bankruptcy courts have construed Rule 7001(1) more narrowly and in fact hold that at least some analogous disputes should be resolved as contested matters—not adversary proceedings—as I will now explain.

While there is no case law (not before today, at least) addressing whether § 303(i) disputes with non-petitioning-creditors (like Schmidt and Wafford) should be resolved in adversary proceedings or as contested matters, there *is* abundant case law as to whether requests for relief under a different section, 11 U.S.C. § 362(k)—which affords debtors attorney's fees, costs, and damages for violations of the bankruptcy automatic stay—should be resolved in adversary proceedings or as contested matters.[7] And, the prevailing practice in the vast majority of bankruptcy courts (at least, in those that have addressed the issue in written opinions) is for § 362(k) disputes to be resolved as contested matters that are initiated by motion. *See In re Ballard*, 502 B.R. 311, 313 n.1 (Bankr. S.D. Ohio 2013) (collecting cases).[8] *Ballard* and the cases cited therein explain the rationale these courts adopt for resolving § 362(k) disputes as contested matters, and it is unnecessary for me to repeat their reasons here. The pertinent point is, if it is correct under the bankruptcy rules, as the majority of bankruptcy courts appear to believe, to resolve § 362(k) disputes as contested matters, then, for the sake of consistency, I see no reason that it

[7] The automatic stay is defined in 11 U.S.C. § 362(a). Generally, it provides that once a bankruptcy petition is filed, creditors are prohibited "from making collection efforts against the debtor or the property of the debtor's estate." *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 353 (5th Cir. 2008) (paraphrasing § 362(a)). Additionally, courts have held that non-creditors, who are not attempting to collect on a debt, can violate the automatic stay in certain circumstances, too. *See, e.g.*, *In re Lee*, 35 B.R. 452 (Bankr. N.D. Ga. 1983).

[8] In allowing § 362(k) disputes to be resolved as contested matters that are initiated by motion, it appears that bankruptcy courts do not distinguish between demands for § 362(k) damages from creditors who previously received notice of the bankruptcy case, *see, e.g.*, *In re Meadows*, 396 B.R. 485 (B.A.P. 6th Cir. 2008), and others who did not have prior notice of or participation in the bankruptcy case*, see, e.g.*, *In re Hill*, 523 B.R. 704 (Bankr. D. Mont. 2014).

shouldn't also be correct for § 303(i) disputes to be resolved as contested matters, too. I discern no material difference between the two sections, both of which afford attorney's fees, costs, and damages when the bankruptcy rules have been violated. Thus, the majority's holding—that McMillan must, as a jurisdictional prerequisite, initiate an adversary proceeding against Schmidt and Wafford with service of summonses and a complaint—is contrary to the analogous practice of resolving disputes under § 362(k) as contested matters that are initiated by motion.

I note, too, that when appropriate circumstances arise, bankruptcy courts sometimes *sua sponte* exercise jurisdiction over potential violators of the automatic stay. See, for example, *In re Lee*, 35 B.R. 452, 455 (Bankr. N.D. Ga. 1983), in which the bankruptcy court *sua sponte* ordered a bank, which was not previously part of the bankruptcy case, to show cause why its conduct (specifically, its closure of the debtors' bank accounts) did not violate the automatic stay. The majority's holding—that an adversary proceeding initiated by summonses and a complaint is a jurisdictional prerequisite here—is also contrary to this practice of bankruptcy courts *sua sponte* addressing potential violations of the automatic stay.

To summarize, there is tension between the majority's holding here and the current prevailing practices in bankruptcy court. I am hesitant to upset or disturb these customs in the absence of a clear indication that the law so requires, and I see no such indication here. Therefore, I would hold, in accordance with what appears to be the prevailing practice in bankruptcy courts as to § 362(k), an analogous provision, that § 303(i) disputes, including McMillan's dispute with Schmidt and Wafford, may be initiated by motion and resolved as contested matters. I respectfully dissent from the majority's contrary holding that the bankruptcy court here was without jurisdiction to act

because McMillan failed to serve Schmidt and Wafford with summonses and a complaint.

The second issue in this case is whether § 303(i) as a substantive matter allows for damages from persons, like Schmidt and Wafford, who did not join the involuntary bankruptcy petition as petitioning creditors but nevertheless caused the petition to be filed. Because the majority doesn't reach this question, there is no need for me to decide it here. I will briefly note, though, that one of McMillan's theories appears to have potential merit. That is, he argues that § 303(i) implicitly incorporates the common law doctrine of agency holding that principals are liable for the authorized acts of their agents. (Here, he claims that Aigner, the petitioning creditor, filed the involuntary bankruptcy petition in his capacity as an agent for Schmidt and Wafford, the principals.) If § 303(i) indeed implicitly incorporates common law doctrines of agency liability, it would not be the first federal statute to do so. *See, e.g.*, *Meyer v. Holley*, 537 U.S. 280 (2003) (Fair Housing Act); *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982) (Sherman Act); *Wood v. Holiday Inns, Inc.*, 508 F.2d 167 (5th Cir. 1975) (Fair Credit Reporting Act); *Paul F. Newton & Co. v. Tex. Commerce Bank*, 630 F.2d 1111 (5th Cir. 1980) (Securities Exchange Act); *Chowdhury v. Worldtel Bangladesh Holding, Ltd.*, 746 F.3d 42 (2d Cir. 2014) (Torture Victim Protection Act); *1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013) (Lanham Act). The next time this issue arises, it deserves serious consideration.

For the foregoing reasons, I respectfully dissent.