**In re Ernest PHELMETTA and Pauline Phelmetta, Debtors.**

**Bankruptcy No. 5–80–564.**

United States Bankruptcy Court, D. Connecticut.

Dec. 8, 1980.

Cecelia F. Rosenberg, Bridgeport, Conn., for debtors.

* U.S.B.J., Southern District of New York, sitting by designation of the Chief Judge, United

Carl R. Ajello, Atty. Gen., Robert A. Nagy, Asst. Atty. Gen., Hartford, Conn., of counsel, for State of Connecticut.

HEARING ON OBJECTIONS FILED BY ATTORNEY GENERAL OF THE STATE OF CONNECTICUT TO EXEMPTIONS CLAIMED BY DEBTORS.

HOWARD SCHWARTZBERG, Bankruptcy Judge *.

The State of Connecticut, as creditor for medical services furnished to the debtor, Ernest Phelmetta, has objected to the exemptions claimed by the above–captioned debtors with respect to their equity in certain real property located on Sampson Street, Bridgeport, Connecticut. The Attorney General of the State of Connecticut argues that the property in question "was not used as a residence by either debtors [sic], any of their dependents, nor is it a cooperation that owns property that the debtors or a dependent of the debtors uses as a residence nor is it a burial plot for either debtor or one of their dependents." Additionally, the State of Connecticut objects to this exemption, as claimed by the debtor, Pauline Phelmetta, on the ground that "she acquired her interest in said property from the bankrupt [sic], Ernest Phelmetta, by quitclaim deed dated May 30, 1980."

Both objections are based upon a misreading of the Bankruptcy Code and should be dismissed as a matter of law. However, since the parties have stipulated as to the salient facts the court will incorporate the agreed facts in this decision in order to present a complete picture of the controversy.

## FACTS

1. The debtors, Ernest and Pauline Phelmetta, are a husband and wife who filed a voluntary joint petition for relief under the Bankruptcy Reform Act of 1978 with this Court on August 4, 1980.

States Court of Appeals, Second Circuit.

2. Both debtors are jointly liable to the State of Connecticut for medical services furnished to the debtor, Ernest Phelmetta, prior to the commencement of this case.

3. Both debtors claimed their joint exemptions in the total sum of $15,000 with respect to certain residential real estate located at 235 Sampson Street, Bridgeport, Connecticut. This property was sold by the trustee in bankruptcy at public auction on September 27, 1980 for the sum of $44,000. The property was encumbered by a mortgage in the principal amount of $40,000, which was listed in the schedules as having been reduced to $5,000. Hence, there was a substantial equity available to support a claim for maximum exemptions available under Code § 522(d). Since the State of Connecticut does not provide for a homestead exemption, the debtors understandably chose the federal alternative under Code § 522(d).

4. The property at 235 Sampson Street, Bridgeport, Connecticut, was purchased on August 26, 1961, by Ernest and Laura B. Phelmetta in survivorship. The purchase price was $28,000.00, and the mortgage was $15,000.00. (At the time the said property was sold by the Trustee in Bankruptcy, the mortgage balance was $4,018.28.) Ernest and Laura Phelmetta resided at the said premises continuously, together with Mrs. Phelmetta's children by a former marriage.

5. On February 19, 1974, Mrs. Phelmetta died, and the said property became Mr. Phelmetta's as surviving joint owner.

6. Mr. Phelmetta and his stepchildren, one of whom he had adopted, continued in residence at the same premises until December 22, 1979, when Mr. Phelmetta married Pauline Wilson, and, because of the hostility of the stepchildren, was unable to take his new wife into his home as he had planned.

7. Shortly after the marriage, Mr. Phelmetta moved into his second wife's apartment at 87 Hollister Street, Stratford, Connecticut, with the intention of arranging for his stepchildren to move out of his house so that he could occupy it with his wife. Despite his repeated requests, the stepchildren refused to move and threatened both Mr. Phelmetta and his wife with physical harm if they attempted to gain possession of the premises. Mr. Phelmetta did not return to the Sampson Street house, and has not resided there since December 1979.

8. In May, 1980, Mr. and Mrs. Phelmetta consulted counsel concerning his stepchildren's claim that their mother had promised to leave the Sampson Street property to them. Although the stepchildren had no legal claim to the said property, Mr. Phelmetta wished to guarantee that the said property would go to his wife at his death. Accordingly, at counsel's advice, he quitclaimed the said property to himself and his wife in survivorship on May 29, 1980 (recorded in the land records at Bridgeport Town Clerk's Office, Vol. 1629, Page 564.)

9. At the hearing in Bankruptcy Court on September 3, 1980, Mr. Phelmetta testified that he had given funds to his stepchildren to pay all his premiums on medical and health and life insurance. Without his knowledge or consent, they failed to pay for any of the policies and left Mr. Phelmetta without insurance coverage of any kind. When Mr. Phelmetta became ill in January 1980, he learned that his insurance policies had either lapsed or had been cancelled. Furthermore, by operation of statute, his wife had become jointly liable for the said medical bills and was a debtor thereon.

10. Mrs. Phelmetta has never resided at the Sampson Street house, but, together with her husband, had assumed responsibility for bills of the property such as mortgage payments, interest, taxes, insurance, heating and utility bills, maintenance and repair from January 1980 to the date of sale of property by the Trustee in Bankruptcy. At no time was rental income of any kind sought or received from anyone for the Sampson Street property.

11. Mr. Phelmetta is currently disabled and is receiving Supplementary Security Income from the Social Security Administration. Mrs. Phelmetta, formerly a cafeteria aide at the Bridgeport Mental Health Center, is currently unemployed.

## DISCUSSION

▆ That the debtor, Pauline Phelmetta, acquired her interest in the real property by quitclaim deed from her husband on May 30, 1980, is not a ground for objecting to her claimed exemption. Apparently the Attorney General's Office intends to imply that this transaction might conceivably be regarded as a fraudulent conveyance within the meaning of Code § 548. However, the Attorney General represents the State of Connecticut and not the trustee in bankruptcy. Code § 548 is an avoiding power available solely to the trustee and not to creditors. The language of Code § 548(a) expressly states that "trustee may avoid" certain proscribed transfers.

Even if the trustee did move to avoid the transfer in question, which he did not, and even if this were an adversary proceeding to avoid an alleged fraudulent transfer, which this is not, it is abundantly clear that Pauline Phelmetta's liability to the State of Connecticut arose out of her statutory obligation for the medical services furnished to her husband. Conceivably such assumed liability could constitute "a reasonably equivalent value in exchange for such transfer", as expressed in Code § 548(a)(2)(A). The Court need not address this issue since this is not an adversary proceeding to set aside a fraudulent transfer, even though this question may lurk beneath the surface of the objection to the claimed exemption. Although the debtor is given certain avoiding powers under Code § 522(f) and (h) vis a vis creditors whose interests impair the debtor's allowable exemptions, the converse is not true; creditors may not assert avoiding powers available exclusively to the trustee.

Suffice it to say that the objection asserted by the State of Connecticut predicated on the quitclaim deed is devoid of merit.

The main objection voiced by the State of Connecticut on the ground that the debtors did not physically reside at the location in question, since Ernest Phelmetta could not take his new wife into his home because of the hostility of his stepchildren, is sad, but irrelevant. This issue may be resolved without intrusion into the domestic tension in this case.

▆ Notwithstanding that a debtor does not, or cannot claim a maximum $7500 exemption "in real property or personal property that the debtor or a dependent of the debtor uses as a residence in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence or in a burial plot" as allowed under Code § 522(d)(1), a debtor may have a $400 exemption, plus the spillover of any unused amount of the exemption provided under paragraph (1) of this subsection "*in any property*" (Emphasis added), as expressed in Code § 522(d)(5). See *In Re Upright*, 1 B.R. 694, 5 B.C.D. 1124 (Bkrtcy.N.D.N.Y. 1979) Thus, the items of residence or burial plot are surplusage. This exemption was offered to apartment dwellers so as not to discriminate against nonhomeowners. See *House Report No. 95–595*, 95th Cong., 1st Sess. (1977) 361–362, U.S.Code Cong. & Admin.News 1978, 5787, 6317. Hence, since each debtor was entitled to apply Code § 522 separately with respect to their claimed exemptions, as authorized under Code § 522(m), it follows that they are entitled to a total maximum exemption under paragraph (5) of subsection (d) in the sum of $15,800 (twice $7500 plus $400).

Accordingly, the $15,000 exemption claimed by the debtors under Code § 522(d) is proper and the objection thereto filed by the State of Connecticut is groundless.

## CONCLUSIONS OF LAW

1. The debtors are entitled to claim an exemption of $15,000 with respect to their equity in the property in question.

2. The objection filed by the State of Connecticut to the exemption claimed by the debtors under Code § 522(d) in the amount of $15,000 is dismissed.