In re Shirley Irene Gibbs CARR, Debtor.

Shirley Irene Gibbs CARR, Plaintiff,

v.

Charles and Peter DEMUSIS; Demusis Brothers, Inc.; Joseph Lukas; Daniel Meister, Trustee; Usha Lee Carr; Co-For Corporation and New Haven Savings Bank, Defendants.

Bankruptcy No. 205–5–83–00354.
Adv. No. 205–5–83–0440.

United States Bankruptcy Court, D. Connecticut.

Nov. 23, 1983.

Walter D. Wagoner, Jr., New Haven, Conn., for debtor.

Joseph B. Lukas, New Haven, Conn., for DeMusis Bros., Inc., Charles and Peter Demusis and pro se.

## MEMORANDUM AND ORDER ON COMPLAINT OF CHAPTER 13 DEBTOR TO AVOID FRAUDULENT TRANSFER, 11 U.S.C. § 548

ALAN H.W. SHIFF, Bankruptcy Judge.

This matter is before the court on a Chapter 13 debtor's complaint, seeking to avoid, pursuant to Code sections 547 and 548, a transfer of her residence. During his argument, counsel for the debtor abandoned his effort to avoid the transfer under Code § 547. Accordingly, this memorandum and order is limited to the issues raised under Code § 548.

Although this action was brought against DeMusis Bros., Inc., Charles and Peter De-musis and Joseph Lukas, as well as three others who hold or held a security interest in the subject property and the trustee in bankruptcy, it was only prosecuted against DeMusis Bros., Inc., Charles and Peter Demusis and Joseph Lukas, (hereinafter collectively referred to as defendants).

### I

### BACKGROUND

The debtor owned a one family house (property) which was subject to a first mortgage with New Haven Savings Bank in the amount of $8,000.00, a second mortgage with Usha Lee Carr in the amount of $10,000.00, a third mortgage with Co-For Corporation in the amount of $9,022.00 and a judgment lien held by DeMusis Bros., Inc. in the amount of $231.00. On March 29, 1982, Co-For Corporation began strict foreclosure proceedings on its third mortgage in the Superior Court of the State of Connecticut for the Judicial District of New Haven. A judgment of strict foreclosure entered on January 12, 1983, and the State Court set law days commencing February 28, 1983. The debtor failed to redeem the property on February 28, 1983. On March 1, 1983, De-Musis Bros., Inc. redeemed the property by paying Co-For Corporation $9,022.00, the amount of its debt. The property was thereupon transferred to DeMusis Bros., Inc., subject to the first and second mortgages. On March 2, 1983, DeMusis Bros., Inc. transferred the property by quitclaim deed to Charles and Peter Demusis, its president and vice president, and Joseph Lukas, their attorney in this action, for $231.00.

### II

### ISSUES

1. May a Chapter 13 debtor commence and maintain an action under Code § 548?

2. If a Chapter 13 debtor may commence and maintain this action, is the transfer of the property avoidable under Code subsections 548(a)(2)(A) and (B)(i)?

3. If the transfer is avoidable by the debtor under Code section 548, how does that remedy affect the transferees?

## III

## DISCUSSION, FINDINGS AND CONCLUSIONS OF LAW

### A

#### COMMENCEMENT OF ACTION BY DEBTOR

The debtor's complaint utilizes Code § 522(h) as a means of reaching Code § 548. The same result may be achieved without that detour. Although Code § 548 appears to limit its avoiding powers to the trustee, an analysis of the statutory scheme of Chapter 13 compared with Chapters 7 and 11 and the statutory authority and duties of a Chapter 13 debtor compared to a Chapter 13 trustee leads to the conclusion that the Chapter 13 debtor has standing to seek the avoidance of a transfer under Code § 548. Indeed in *Anthony Russo v. Anthony Ciavarella,* 28 B.R. 823 at 827, 10 B.C.D. 477 at 480 (Bkrtcy.S.D.N.Y.1983) Judge Schwartzberg observed, "[n]ot only is a Chapter 13 trustee 'not exclusively empowered to invoke' the avoiding powers; the Chapter 13 trustee may not do so at all over the objections of a debtor who believes that a Chapter 13 plan may succeed only if certain transfers are not avoided." (quoting *In re Hall,* 26 B.R. 10, 11 (Bkrtcy.M.D.Fla. 1982))

As Judge Schwartzberg's scholarly analysis teaches,

A Chapter 13 trustee is appointed to act in a limited fashion. He or she serves an administrative function, evaluating proposed plans to ensure their compliance with the statutory provisions prior to recommending any plans for confirmation. The debtor remains in control of the assets. In a Chapter 7 case, the appointed trustee steps into the debtor's shoes, taking control of the debtor's assets and seeing that every effort is made to enhance the estate for full distribution to the creditors.

*Id.* 28 B.R. at 825, 10 B.C.D. at 478.

Since the Chapter 13 debtor remains in control of the assets of the estate and offers a plan for the payment of allowed claims out of future earnings or other future income and since the trustee's functions are limited under Code § 1302 to administrative functions, in sharp contrast to the wide array of powers and duties available to Chapter 7 and 11 trustees, it is apparent that Congress intended an active role for the Chapter 13 debtor at the functional expense of the Chapter 13 trustee. A Chapter 13 trustee would have little, if any, interest in avoiding a fraudulent transfer of a Chapter 13 debtor's residence. The debtor's interest in that result, however, is obvious. It is unlikely that Congress, intending to permit a Chapter 13 debtor to preserve his home by curing defaults and reinstating mortgages on residential property, *see In re Taddeo,* 685 F.2d 24, 26 (2d Cir.1982), also intended to limit the authority to avoid the fraudulent transfer of that residence to a trustee who, as noted, has minimal interest in the transfer.

It should also be observed that the defendants' attorney neither argued against nor offered any authority to the effect that the debtor lacked standing to assert a claim seeking to avoid a fraudulent transfer under Code § 548.

This Court accordingly concludes that the plaintiff has standing to commence and maintain this action against the defendants under Code § 548.

### B

#### FRAUDULENT TRANSFER

Code section 548 provides in pertinent part:

§ 548. Fraudulent transfers and obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... on or within one year before the date of the filing of the petition, if the debtor—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer . . . ; and

(B)(i) was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer . . .

The transfer in the instant case occurred on March 1, 1983 when DeMusis Bros., Inc. redeemed the property and divested the debtor of all interest therein. Since the petition in this case was filed on April 12, 1983, the transfer was clearly within one year before the date of the filing of the petition.

The debtor claims that the transfer was for less than a "reasonably equivalent value." The question of how to calculate reasonably equivalent value has been the subject of considerable debate. *In re Richardson,* 23 B.R. 434 (Bkrtcy.D.Utah 1982); *In re Madrid,* 21 B.R. 424 (Bkrtcy.App. 9th Cir.1982). Since Code § 548(a) is largely derived from section 67(d)[1] of the Bankruptcy Act of 1898, (11 U.S.C. § 107), case law under the former statute is a useful tool in construing its meaning and intended purpose. In *Durrett v. Washington National Insurance Co.,* 621 F.2d 201, 203 (1980), the Fifth Circuit Court of Appeals, construing Act § 67(d), held that a transfer by foreclosure sale for a price approximately 58 percent of the fair market value of the property was not the "fair equivalent" value of the property. The *Durrett* court went on to observe,

We have been unable to locate a decision of any district or appellate court dealing only with a transfer of real property as the subject of attack under section 67(d) of the Act, which has approved the transfer for less than 70 percent of the market value of the property.

*Id.* See also *In re Smith,* 21 B.R. 345, 352 (Bkrtcy.M.D.Fla.1982).

While the Code does not define "reasonably equivalent value", decisions under Code § 548 have evolved which sharpen the focus on this concept. In *In re Richardson, supra,* Judge Clark suggests and this Court agrees that the best method of determining whether a purchase price is the reasonably equivalent value of the property received by the purchaser is to compare the purchase price to the equity remaining in the property after subtracting the post-transfer liens from the value of the property.

The defendants' reliance on *In re Madrid, supra,* is misplaced. The *Madrid* court was considering reasonably equivalent value in the context of a public sale and concluded ". . . that the consideration received at a noncollusive, regularly conducted public sale satisfies the 'reasonably equivalent value' requirement of 11 U.S.C. § 548(a)(2) . . ." *Id.* at 425.

In the transfer of her property to DeMusis Bros., Inc., the parties agree that the debtor received value to the extent of $9,253.00—the amount of debt diminution. The debtor offered evidence to prove that at the time of the transfer the property had a fair market value of $48,000.00. The debtor further offered evidence to prove that the aggregate value of the post-sale liens was approximately $18,000.00. The defendants offered no credible evidence to the contrary.

It is therefore found that the fair market value of the property was $48,000.00, the debtor received value in the amount of $9,253.00, the post-sale liens remaining on the property totalled $18,000.00 and the equity remaining in the property after the transfer was $30,000.00. Thus, utilizing the above formula, it is found that the value received by the debtor was approximately 31% of the equity remaining in the property after the transfer. Finally, since the evidence that the transfer of the property rendered the debtor insolvent was uncontroverted and convincing that fact is found as well.

---

1. Bankruptcy Act § 67d(1), the predecessor of § 548, used the phrase "fair consideration" which was defined as "fair equivalent" instead of the Code term "reasonably equivalent value." "Fair consideration" included a finding of good faith. The Code has dropped the good faith requirement.

■ It is accordingly concluded that the property was transferred within one year before the date of the filing of the petition for less than a reasonably equivalent value in exchange for such transfer as a result of which the debtor became insolvent and that the debtor may avoid the transfer under Code subsection 548(a)(2)(A) and (B)(i).

## C

### EFFECT OF REMEDY ON TRANSFEREES

Having concluded that the Chapter 13 debtor in this proceeding may avoid the transfer of her property, the question remains—how does this remedy affect the transferees?

Code § 550(a) provides that the trustee (the debtor in this proceeding) may recover, for the benefit of the estate, property transferred from (1) the initial transferee or (2) "any immediate or mediate transferee of such initial transferee." Code § 550(b), however, provides:

The trustee may not recover under (a)(2) of this section from—

(2) any immediate or mediate *good faith* [2] transferee of such transferee (emphasis added)

The immediate transferees in this proceeding, Charles and Peter Demusis and their attorney Joseph Lukas, undoubtedly knew of the foreclosure action. It appears from the evidence that the Demusises were principles of DeMusis Bros., Inc., Lukas rep-resented them and the three purchased the property one day after the corporation redeemed the property. It is inconceivable that Charles and Peter Demusis and Joseph Lukas believed they were paying a fair price for the property. As noted, the price DeMusis Bros., Inc. paid was only 31% of the equity remaining after post-transfer liens. The payment by Charles and Peter Demusis and Joseph Lukas for only $231.00 for the property which had a fair market value of $48,000.00 and equity of $30,000.00 over the first and second mortgages clearly demonstrates bad faith particularly since the day before their own company paid $9,022.00 for that property. The debtor may therefore recover the property from Charles and Peter Demusis and Joseph Lukas under Code subsection 550(a).

■ Having concluded that Charles and Peter Demusis and Joseph Lukas were not good faith transferees and that the debtor may recover the property from them under Code subsection 550(a), it follows that they are not entitled to a lien on the property under Code subsection 550(d)(1).[3]

The initial transferee, DeMusis Bros., Inc., however, is entitled to a lien on the property under Code subsection 548(c)[4] as there was no evidence to support a conclusion that DeMusis Bros., Inc.'s redemption for $9,022.00 was in bad faith even though, as noted, it was for less than a reasonably equivalent value. The avoidance of the fraudulent transfer under Code § 548(a)(2)(A) and (B)(i) did not require a

---

2. As the court observed in *In re Greenbrook Carpet Co., Inc.,* 22 B.R. 86, 90–91 (Bkrtcy.N.D. Ga.1982).

"The term, 'good faith,' does not merely mean the opposite of the phrase 'actual intent to defraud.' That it to say, an absence of fraudulent intent does not mean that the transaction was necessarily entered into in good faith. The lack of good faith imports a failure to deal honestly, fairly and openly." *Southern Industries, Inc. v. Jeremias,* 66 A.D.2d 178, 183, 411 N.Y.S.2d 945 (2d Dep't 1978). Good faith may be lacking because of a transferee's knowledge of a transferor's unfavorable financial condition at the time of the transfer (*Cohen v. Sutherland,* 257 F.2d 737, 742 (2nd Cir. 1958). . . .

3. Code subsection 550(d)(1) provides in pertinent part:

A *good faith* transferee from which the trustee may recover under subsection (a) of this section has a lien on the property recovered . . . (emphasis added)

4. Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on any interest transferred, may retain any lien transferred, or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

finding of lack of good faith.[5] *See In re Richardson, supra,* at 447.

## ORDER

For the reasons herein stated, it is hereby

ORDERED that the transfer of the property to DeMusis Bros., Inc. is avoided; and it is further

ORDERED that the debtor may recover the property from Charles and Peter Demusis and Joseph Lukas; and it is further

ORDERED that DeMusis Bros., Inc., has a lien on the property on account of the $9,022.00 it paid Co-For Incorporated and that Charles and Peter Demusis and Joseph Lukas have an unsecured claim against the debtor in the amount of $231.00; and it is further

ORDERED that the debtor amend her bankruptcy petition to reflect the $9,022.00 lien of DeMusis Bros., Inc. and the $231.00 unsecured debt owed to Charles and Peter Demusis and Joseph Lukas; and it is further

ORDERED that the complaint against Daniel Meister, Usha Lee Carr, Co-For Corporation and New Haven Savings Bank is dismissed with prejudice for failure to prosecute.