In re Shirley Irene Gibbs CARR,
Debtor.

Charles & Peter DEMUSIS, DeMusis
Bros., Inc., and Joseph B. Lukas,
Defendants-Appellants,

v.

Shirley Irene Gibbs CARR,
Plaintiff-Respondent.

Bankruptcy No. 205–5–83–00354.

Civ. No. B 83–796(WWE).

United States District Court,
D. Connecticut.

July 6, 1984.

Walter Wagoner, New Haven, Conn., for debtor.

Joseph B. Lukas, New Haven, Conn., for defendants-appellants.

## RULING ON APPEAL

EGINTON, District Judge.

This bankruptcy appeal involves the narrow question, apparently one of first impression in this district, whether a creditor's redemption of a debtor's property in strict foreclosure proceedings can be avoided as a fraudulent transfer under 11 U.S.C. § 548 ("§ 548").

The bankruptcy court, 34 B.R. 653, Shiff, B.J., answered the question affirmatively after examining the undisputed facts which are set forth here for ease of reference.

### FACTS

Plaintiff-Appellee Carr ("debtor") owned a one family house ("property") which was subject to a first mortgage with New Haven Savings Bank for $8,000, a second mortgage with Usha Lee Carr for $10,000, a third mortgage with Co-For Corporation ("C–FC") for $9,022 and a judgment lien for $231 held by defendant-appellant DeMusis Bros., Inc. ("DBI").

On March 29, 1982, C–FC instituted strict foreclosure proceedings in state Superior Court. A judgment of strict foreclosure was entered on January 12, 1983, and law days were set commencing February 28, 1983. The debtor failed to redeem the property on February 28, 1984.

On March 1, 1983, DBI redeemed the property by paying C–FC $9,022. The property was thereupon transferred to

DBI, subject to the first and second mortgages. On the next day, March 2, 1983, DBI quitclaimed the property for $231 to defendants-appellants Charles and Peter DeMusis, DBI's president and vice-president, and to defendant-appellant Joseph Lukas, their attorney in this action.

## DISCUSSION

§ 548 reads in relevant part:

§ 548. *Fraudulent transfers and obligations*

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor— ...

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

The bankruptcy court's Memorandum and Order ("Order"), 34 B.R. 653, avoiding the transfer of property to DBI was based on the following findings: the transfer occurred within one year before the debtor's filing of her Chapter 13 petition; $9,253—the amount of debt diminution resulting from the initial and immediate transfers—was not reasonably equivalent in value to $30,000—the equity in the transferred property remaining after subtraction of the first and second mortgages; and the transfer rendered the debtor insolvent.[1]

Appellants' principal contention is that the bankruptcy court unnecessarily reached and decided the issue of "reasonably equivalent value" ("REV") in § 548(a)(2)(A). Appellants present two lines of argument to support this contention.

First, appellants argue that § 548(a)(2)(A), (B)(i) restates the two traditional elements of constructive fraud: a conveyance without valuable consideration that leaves the grantor without sufficient assets to cover existing debts. Drawing on state court decisions on the issue of valuable consideration, appellants derive a bright-line rule that any transfer made in satisfaction of a valid pre-existing debt, such as the $9,022 owed to DBI, is a transfer for valuable consideration invulnerable to avoidance on the grounds of constructive fraud. Appellants' Reply Brief at 3-4.

The premise of appellants' argument is sound. § 548(a)(2)(A), (B)(i) does reformulate the elements of the constructive fraud theory. *See In re Curtina International, Inc.,* 23 B.R. 969, 973 (Bankr.S.D.N.Y. 1982); 4 Collier on Bankruptcy ¶ 548.03 at 548-42 to -43 (L. King 15th ed. 1984). The conclusion, however, is faulty.

Appellants would have the court recognize a presumption of REV, in spite of the general rule that REV is to be determined upon review of all the facts and circumstances of the case. *Id.* at 974. Proof of a pre-existing debt is an important, but not dispositive, factor in the court's review. If such proof were conclusive on the issue of REV, then any transfer in satisfaction of a pre-existing debt would be unavoidable no matter how great the discrepancy between the value of the property transferred and the amount of the debt satisfied.

Appellants' second argument in favor of a presumption of REV is based on *In re Madrid,* 21 B.R. 424 (Bankr.9 Cir.1982), which held that a public sale itself insures a debtor's receipt of REV for the purposes of § 548(a)(2)(A).[2] Appellants contend that

---

1. The bankruptcy court's Order contains three parts. This appeal focuses solely on the conclusions stated in part B of the Order. *See* Preface to Appellants' Opening Brief at iii.

2. Holding the contrary is *Durrett v. Wash. Nat'l Ins. Co.,* 621 F.2d 201 (5 Cir.1980), a decision rejected by *Madrid* and followed by the court

below. *Durrett* requires an examination of all the circumstances surrounding the transfer of the debtor's property even when the transfer is effected at a public foreclosure sale. *Id.* at 204; *see In re Richardson,* 23 B.R. 434, 446-48 (Bankr.D.Utah 1982) (rejecting the *Madrid* rule in favor of *Durrett* approach of examining REV in light of all surrounding circumstances).

the judicial supervision of the strict foreclosure proceedings against the debtor, like the public sale discussed in *Madrid*, insured her receipt of REV and obviated the bankruptcy court's inquiry under § 548(a)(2)(A). Appellants' Opening Brief at 5–6.

Appellants' analogy would be persuasive had the *Madrid* court justified its presumption of REV solely on the ground that a public sale discourages collusive prepetition transfers. Undoubtedly judicial supervision of strict foreclosure proceedings has the same salutary effect.

However, the court interprets the *Madrid* presumption of REV to rest in part on another aspect of the public sale—the triggering of market forces—that no amount of judicial oversight can effect. Even in the depressed circumstances of foreclosure, the procedures of advance notice and bidding and the participation of non-creditors as well as creditors in the public sale help to secure the best price available for the debtor's property.

In this case the debtor's property was transferred through strict foreclosure, rather than through foreclosure by sale. The market forces that can enhance the price received in a public sale were effectively immobilized. In strict foreclosure, the "price" received is only as great as the amount of the debt owed to the foreclosing creditor.

Since the presumption in *Madrid* is premised in part on the value-enhancing aspects of a public sale, it cannot be translated into the context of strict foreclosure. Without the objective assessment of value that a sale provides, the bankruptcy court properly evaluated REV in light of all the circumstances surrounding the transfer.[3]

For the foregoing reasons, the Order of the bankruptcy court is AFFIRMED.

IT IS SO ORDERED.

---

**3.** The court expresses no opinion on whether it would apply the *Madrid* presumption in the case of a transfer at a public foreclosure sale. Such application would depend on the reconciliation of the *Madrid* and *Durrett* rules, *supra* note 2.