In re John B. WILLIS and Eloise T. Willis, Debtors.

John B. WILLIS and Eloise T. Willis, Plaintiffs,

v.

BORG–WARNER ACCEPTANCE CORPORATION, Defendant.

Bankruptcy No. 83–04265–H3–3.

Adversary No. 84–0157–H3.

No. MBH–85–258.

United States District Court,
S.D. Texas,
Houston Division.

March 21, 1985.

J.S. Norman, Jr., Norman & Norman, Houston, Tex., for plaintiffs.

Thomas J. Coleman, Jr., Ross, Banks, May, Cron & Cavin, Houston, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

RANDALL, Circuit Judge: *

This matter, before the court on the parties' cross-motions for summary judgment,

* Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation. Pursuant to section 104(a) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 104(a), 98 Stat. 341 (to be codified at 28 U.S.C. § 157(d)), an order was

entered in the United States District Court for the Southern District of Texas withdrawing the reference in this case—then pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division—for the lim-

poses the issue whether the debtors may avoid the nonjudicial foreclosure sale of their residence as a fraudulent transfer under 11 U.S.C. § 548. Because the chapter 13 debtors have standing to bring the action, and because the involuntary sale, held within one year of the filing of the petition by the insolvent debtors was for less than a reasonably equivalent value, the sale constituted constructive fraud and may be avoided. Accordingly, the debtors' motion for summary judgment is GRANTED and the creditor's motion is DENIED.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The debtors, John B. Willis and Eloise T. Willis (Debtors), owned property, their residence, which was located at 5739 Lakefield in Houston, Texas (the Property). The Property was subject to a first lien deed of trust securing payment of a promissory note payable to the Lomas & Nettleton Company and which had been assigned to the Government National Mortgage Association. On April 21, 1980, the Debtors contracted with creditor Borg-Warner Acceptance Corporation (Borg-Warner) and with contractor Diplomat Builders, Inc. (Diplomat) for the installation of a central heating and air conditioning system in their residence. The Debtors executed a promissory note to Diplomat, the payment of which was secured by a mechanic's and materialman's lien, or second lien, on the Debtors' property. Diplomat assigned its rights and interests in the contract, including the lien, to Borg-Warner.

In January, 1983, John B. Willis lost his job and the Debtors were not able to make the payments on the home improvement contract, thereby defaulting on the second lien note. Borg-Warner accelerated the full amount due on the second lien indebtedness. On June 7, 1983, after complying with the requisites of posting written notice of the time, the place, and a description of the property subject to public sale, Borg-

Warner caused its trustee to publicly sell the property at the Harris County Courthouse door to Borg-Warner's agent for the sum of $6,510.47. As of this date, the Debtors had paid the first lien note on the Property down to an outstanding balance of $3,343.45, and the fair market value of the Property was not less than $35,300.

On July 14, 1983, Borg-Warner filed suit for forcible detainer against the Debtors in the Justice Court of Harris County, Texas. Two weeks later, Borg-Warner obtained a default judgment against the Debtors for forcible detainer.

On October 5, 1983, while the forcible detainer action was on appeal in the County Civil Court at Law of Harris County, the Debtors filed a voluntary petition for chapter 13 relief in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. Within the week, on October 11, Borg-Warner moved for relief from the § 362 automatic stay so that it could prosecute its forcible detainer action against the Debtors. Following a hearing on the motion held on December 8, 1983, the bankruptcy court resolved to lift the stay, but it did not enter an order to that effect until April 26, 1984. The order recited that the stay was "lifted to the extent that [Borg-Warner and the Debtors] may seek adjudication of their respective interests in the real property located at 5739 Lakefield, Houston, Harris County, Texas, in the courts of the State of Texas; subject, however, to the approval of this court in any final disposition of the property."

Following the hearing and the bankruptcy court's determination to lift the stay, Borg-Warner moved for summary judgment in its forcible detainer action, which was then pending against the Debtors in the county court. On January 17, 1984, the county court, holding that the Debtors were guilty of forcible detainer of the Property, granted Borg-Warner's motion for summary judgment. The court entered judgment against the Debtors on January 25, 1984, awarding Borg-Warner possession of the Property.

ited purpose of permitting the district court to enter this order.

The next day, January 26, the Debtors filed the instant action pursuant to 11 U.S.C. § 548, seeking to set aside the foreclosure sale and subsequent transfer to Borg-Warner as a fraudulent conveyance. With various other motions pending, the parties filed cross-motions for summary judgment. The Debtors' motion alleges that no issues of material fact remain and both parties contend they are entitled to judgment as a matter of law. The issues raised by the parties are addressed in turn.

## II.

### DISCUSSION OF THE LAW

A. *Debtors' Standing to Bring a Fraudulent Conveyance Action and the Question of Constructive Fraud*

Under section 548(a) of the Bankruptcy Code of 1978 (the Code), a trustee may avoid any transfer of a debtor's interest in property, which occurs within one year before the filing of the petition, in either of two situations: (1) when the transfer was made with an actual intent to hinder, delay, or defraud, *see* 11 U.S.C. § 548(a)(1), or (2) when the transfer was made involuntarily for less than a reasonably equivalent value and left the debtor insolvent. *See id.* § 548(a)(2). The latter instance is often referred to as constructive fraud. *See* Cook, *Fraudulent Transfer Liability under the Bankruptcy Code*, 17 Hous.L.Rev. 263, 276 (1980). The issue posed in the case at bar is bound up in the question of constructive fraud.

Before addressing whether the Debtors have satisfied the elements of their section 548 fraudulent conveyance action, this court turns its attention to Borg-Warner's contention that the Debtors lack standing to commence and maintain the action. Because the express language of section 548 only provides that the trustee has the power to avoid a fraudulent conveyance, and because chapter 13 debtors are not given the rights of the trustee as are chapter 11 debtors-in-possession, a chapter 13 debtor's right to avoid a transfer in the trustee's stead must have an explicit statutory foun-

dation. Section 522(h) of the Code establishes such a foundation. It provides:

The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section ... 548 ... of this title; and

(2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h). Subsection (g)(1) provides:

[T]he debtor may exempt under subsection (b) of this section property that the trustee recovers ..., to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property....

*Id.* § 522(g)(1). Subsection (b) permits the debtor to elect either federal or state exemptions and to exempt the property listed in the chosen exemptions from property of the estate. *See generally* 3 Collier on Bankruptcy §§ 522.02, .09 (15th ed. 1984).

Finally, rounding out the relevant statutory scheme, section 548(a) provides in pertinent part:

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as

a result of such transfer or obligation ....

11 U.S.C. § 548(a). To avoid a transfer, then, the trustee must show that: (1) there occurred a "transfer" of an interest of the debtor; (2) the transfer occurred within the year preceding the date the petition was filed; (3) the value received was "less than a reasonably equivalent value"; and (4) the debtor was insolvent or was made insolvent by the transfer itself.

 Borg-Warner argues that the Debtors have no standing. Every element of section 522(h) must be satisfied before the Debtor may step into the shoes of the trustee for purposes of a section 548 avoidance action. In the case *sub judice*, the Debtors are entitled to exempt their residence under section 522 and the Texas state law concerning exemptions. The Debtors elected to exempt property from the estate under section 522(b)(2), which facilitates use of the state law exemptions. The Texas Constitution and Property Code protect the homestead property of a family from forced sale for the payment of debts, except in three instances: (1) for payment of a purchase money lien; (2) for satisfaction of taxes due on property; and (3) for payment for work and materials used in constructing improvements on the property. *See* Tex. Const. art. XVI, § 50 (Vernon Supp.1984); Tex.Prop.Code Ann. §§ 41.-001–.002 (Vernon 1984); *see also Stewart v. Clark*, 677 S.W.2d 246, 249 (Tex.App.—Corpus Christi 1984, no writ). Thus, a mechanic's and materialman's lien, like that assigned to Borg-Warner in the instant case, may be placed on a homestead if created in accordance with governing state law.[1] *See Fidelity Savings & Loan Association v. Baldwin*, 416 S.W.2d 482 (Tex. Civ.App.—Beaumont 1967, writ ref'd n.r. e.). It is undisputed that the Property served as the Debtors' residence and was therefore occupied as homestead under Texas law. *See* Tex.Prop.Code Ann. § 41.-001 (Vernon 1984). On the date of the foreclosure, the Property was subject to the purchase money lien for $3,343.45 and the mechanic's lien.[2] The fair market value of the Property was not less than $35,-300 as evidenced by a Harris County Appraisal District Valuation Report embodying a tax appraisal for 1983. Hence, the net value of the Property in excess of the liens amounted to at least $15,971.25. The issue presented here in the context of determining whether the Debtors have standing under section 522(h) to bring a section 548 avoidance action is whether the value of the Property in excess of the value of the liens is exemptable property under section 522(b).

The legislative history regarding section 522 on exemptions is instructive:

1. The Texas Constitution provides for the creation of such a lien "only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead." Tex. Const. art. XVI, § 50 (Vernon Supp.1984). The pertinent section of the Texas Property Code reads:

§ 53.059. *Homestead*

(a) To fix the lien on a homestead, the person who is to furnish material or perform labor and the owner must execute a written contract setting forth the terms of the agreement.

(b) The contract must be entered before the material is furnished or the labor is performed.

(c) If the owner is married, the contract must be signed by both spouses.

(d) The contract must be filed with the county clerk of the county in which the homestead is located, who shall record it in records kept for that purpose.

(e) If the contract is made and recorded by an original contractor, the contract inures to the benefit of all persons who labor or furnish material for the original contractor.

Tex.Prop.Code Ann. § 53.059 (Vernon 1984) (formerly Tex.Rev.Civ.Stat.Ann. art. 5460).

2. The amount of the mechanic's lien is unclear. The Debtors by affidavit list the amount of the lien to be $5,985.30. Borg-Warner's scheduled claim is for $15,985.30, which includes the interest and principal due under the contract on the date of the foreclosure sale, subsequently accruing finance charges, and attorney's fees. This court need not decide the precise amount of the second lien but, giving Borg-Warner the benefit of the doubt, assumes solely for the purposes of this opinion that the lien value is the higher of the two figures.

Under proposed 11 U.S.C. 541, all property of the debtor becomes property of the estate, but the debtor is permitted to exempt certain property from property of the estate under this section. Property may be exempted even if it is subject to a lien, but only the unencumbered portion of the property is to be counted in computing the "value" of the property for the purposes of exemption. Thus, for example, a residence worth $30,000 with a mortgage of $25,000 will be exemptable to the extent of $5,000. This follows current law. The remaining value of the property will be dealt with in the bankruptcy case as is any interest in property that is subject to a lien.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 360–61 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6316; *cf. In re Davis*, 12 B.R. 15 (Bankr.S.D.Ohio 1981). Hence, the Debtors could have exempted the value of the Property in excess of the amount of the liens under section 522(b) had it not been transferred.

■ Setting aside the section 548 requirements, the Debtors have clearly satisfied the remaining requisites for maintaining a fraudulent conveyance action. To the extent that a nonjudicial foreclosure sale constitutes a transfer under sections 522 and 548 of the Code, a settled proposition in the Fifth Circuit, *see Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1980), there is no doubt that the sale involved in this case constituted an involuntary transfer. Further, there is no allegation or even a scintilla of evidence that the Debtors attempted to conceal the property. In addition, there is no evidence that the chapter 13 trustee has in any way attempted to pursue an action to avoid the transfer in question.

Hence, the Debtors' right to bring the avoidance action hinges solely on whether the foreclosure sale was avoidable by the trustee under section 548. Finding that the foreclosure sale constituted a transfer made within one year of the filing of the petition for a less than reasonably equivalent value and that such transfer rendered the Debtors insolvent, this court concludes that the transfer was avoidable under section 548 and that the Debtors have satisfied all of the section 522(h) requirements for standing to bring the instant action.

In *Durrett*, the Fifth Circuit held that a nonjudicial foreclosure sale constituted a "transfer" under section 67(d)(2) of the Bankruptcy Act of 1898 (the Act). *See also Abramson v. Lakewood Bank & Trust Co.*, 647 F.2d 547 (5th Cir.1981), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982); Note, *Nonjudicial Foreclosure Under Deed of Trust May Be A Fraudulent Transfer of Bankrupt's Property*, 47 Mo.L.Rev. 345 (1982). Several courts have concluded that, because the language appearing in section 548(a)(2) of the Code is indistinguishable from that appearing in section 67(d)(2) of the Act, a nonjudicial foreclosure sale is a transfer under section 548. *See In re Wheeler*, 34 B.R. 818, 820 (Bankr.N.D.Ala.1983); *In re Coleman*, 21 B.R. 832, 835 (Bankr.S.D.Tex. 1982); *In re Smith*, 21 B.R. 345 (Bankr.M. D.Fla.1982); *In re Thompson*, 18 B.R. 67 (Bankr.E.D.Tenn.1982). Finding this reasoning persuasive, if not compelled by the Fifth Circuit's holding in *Durrett,* this court concludes that the foreclosure sale of the Property was a transfer under section 548.

*Durrett* is further applicable to the issue of avoidability under section 548 because the decision set the standard for determining whether the price obtained at a foreclosure sale was less than a reasonably equivalent value in exchange for such transfer. In assessing the avoidability under section 548 of a foreclosure sale netting 57.7% of the market value of the property sold, the *Durrett* court observed that "[w]e have been unable to locate a decision of any district or appellate court dealing only with a transfer of real property as the subject of attack [in a fraudulent conveyance action under the federal bankruptcy provisions], which has approved the transfer for less than 70 percent of the market value of the property." 621 F.2d at 203. The 70% figure has been accepted in the

Fifth and Eleventh Circuits as the benchmark test for setting aside transfers under section 548(a)(2). *See, e.g., In re Wheeler,* 34 B.R. at 821 (collecting cases).

■ To make the reasonably-equivalent-value assessment in sales involving foreclosure of a first lien, the sale price or bid is compared with the market value of the property at the time of the sale. *See Durrett,* 621 F.2d at 203; *see also In re Richardson,* 23 B.R. 434, 441 n. 11 (Bankr.D. Utah 1982) (collecting cases). In sales involving the foreclosure of second liens, at least four methodologies have been propounded. In *In re Madrid,* 10 B.R. 795 (Bankr.D.Nev.1981), *rev'd,* 21 B.R. 424 (9th Cir.App.Pan.1982), *aff'd,* 725 F.2d 1197 (9th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), the amount of the first and second liens plus the bid was compared to the value of the property. Applying the *Madrid* test to the facts of the instant case involving property that at the time of sale was valued at $35,300, was encumbered by a first lien of $3,343.45 and a second lien in the assumed amount of $15,985.30,[3] and brought a price of $6,510.47, the percentage would be 73%. In *In re Smith,* 21 B.R. 345 (Bankr.M.D. Fla.1982), the court compared the foreclosure price to the value of the property. The *Smith* test yields an 18% figure for the value paid by Borg-Warner for the Property. A third test was employed in *In re Coleman,* 21 B.R. 832 (Bankr.S.D.Tex. 1982), comparing the bid to the equity remaining in the property after subtracting the amount of the pre-sale liens from the value of the property. The *Coleman* method applied to the facts of the instant case results in a 41% figure. Finally, a fourth test was proposed by the trustee in *In re Richardson,* 23 B.R. 434 (Bankr.D.Utah 1982), a decision which discusses the drawbacks of the first three tests. *See id.* at 441–42 n. 11. The *Richardson* test compares the bid or sale price to the equity remaining in the property after subtracting the amount of the post-sale liens from the value of the property. This comparison

yields a ratio of 20% in the case at bar. *See also In re Carr,* 34 B.R. 653, 656 (Bankr.D.Conn.1983) (applying *Richardson* test), *aff'd,* 40 B.R. 1007 (D.Conn.1984). Hence, three of the four methods for calculating reasonably equivalent value produce percentages far below the 70% mark. Even having assumed that the full amount of Borg-Warner's scheduled claim represented the amount of the second lien, the *Madrid* test barely exceeds the 70% figure. Further, this court is persuaded that the criticism of the *Madrid* test by the *Richardson* court correctly indicates that the test is an inaccurate measure of reasonable value since it credits the purchaser with giving an amount in value that it did not give. *See* 23 B.R. at 442 n. 11. Without determining which of the remaining three methods is the most accurate mode of comparison, this court concludes that the foreclosure price was not less than a reasonably equivalent value in exchange for the transfer.

Section 548(a)(2) further requires that the transfer occur on or within one year of the date the petition was filed and that the debtor was insolvent at the time of the transfer or was rendered insolvent by the transfer. Because the foreclosure sale occurred on June 7, 1983, and the Debtors filed their chapter 13 petition on October 5, 1983, the transfer occurred well within the one-year period.

■ Insolvency is determined by reference to section 101(29) of the Code, which employs the balance sheet test for insolvency. *See In re Wheeler,* 34 B.R. at 821; Cook, *supra,* at 267. The debtor is insolvent if the sum of its debts is greater than the sum of its assets, at a fair valuation, exclusive of property exempted under section 522 or fraudulently transferred. *See* 11 U.S.C. § 101(29). The Debtors filed an affidavit of John B. Willis, attesting to the Debtors' financial condition as of the date of the foreclosure sale. After excluding the exempt property pursuant to section

---

**3.** *See supra* note 2.

101(29)(A)(ii), the balance sheet reflects the following assets and debts:

ASSETS

| | Value |
|---|---|
| Automobile (1982 Chrysler) | $ 9,310.00 |
| Real property (parcel in Corrigan, Texas) | 6,000.00 |
| Total | $15,310.00 |

DEBTS

| | |
|---|---|
| Government National Mortgage Association (Lomas & Nettleton Company) | $ 3,343.45 |
| Chrysler Corporation | 12,780.28 |
| Gordon's Jewelers | 200.00 |
| Dr. Scott Van Zant, D.D.S. | 840.00 |
| Total | $17,163.73 |

Prior to the foreclosure the Debtors had the two listed nonexempt assets and three outstanding debts (excluding the indebtedness to Lomas & Nettleton) that were not totally secured by exempt property. After the foreclosure sale, however, the Debtors remained personally liable to Lomas & Nettleton on the $3,343.45 debt and they no longer had title to the property that was pledged to secure payment of this debt. Therefore, the balance sheet shows that the Debtors were rendered insolvent by the foreclosure sale.

Finally, Borg-Warner's contention that the chapter 13 Debtors lack standing to bring the instant action is analyzed from the perspective of those courts that have based their negative response to this query on the distinction between chapter 13 debtors and chapters 7 and 11 debtors. These courts stress the fact that chapter 13 debtors, unlike chapters 7 and 11 debtors, do not claim exemptions for the purpose of retaining exempt property since they remain in possession of all property of the estate. *See* 11 U.S.C. §§ 1306(b), 1327(b). Hence, while recognizing that the exemption provisions of section 522 technically apply in chapter 13 cases under the general incorporation provision of 11 U.S.C. § 103(a), these courts fail to discern the relevancy of the exemption for purposes of lien or transfer avoidance. *See, e.g., In re Berry,* 30 B.R. 36 (Bankr.E.D.Mich.1983); *In re Corden,* 19 B.R. 552 (Bankr.M.D.Fla.

1982); *In re Aycock,* 15 B.R. 728 (Bankr.E. D.N.C.1981).

The rationale of these cases has been rejected by courts holding the predominant view that a chapter 13 debtor has standing to seek the avoidance of a transfer. *See In re Dudley,* 38 B.R. 666 (Bankr.M.D.Pa. 1984); *In re Fisk,* 36 B.R. 924 (Bankr.W.D. Mich.1984) (collecting twenty-eight pre-1983 cases); *In re Carr,* 34 B.R. 653 (Bankr.D.Conn.1983), *aff'd,* 40 B.R. 1007 (D.Conn.1984); *In re Wheeler,* 34 B.R. 818 (Bankr.N.D.Ala.1983); *In re Slykerman,* 29 B.R. 82 (Bankr.E.D.Mich.1983); *see generally* 3 Collier on Bankruptcy ¶ 522.30 (15th ed. 1984) (drawing no distinction between chapter 13 and chapters 7 and 11 debtors); H.R. Rep. No. 595, 95th.Cong., 1st Sess. 362–63 (1977) (same), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6318–19. Moreover, this is the view of the bankruptcy court in this district. *See In re Coleman,* 21 B.R. 832 (Bankr.S.D.Tex. 1982). The *Carr* court summarized the policies that make reasonable the statutory provision vesting certain chapter 13 debtors with standing to bring avoidance actions:

Since the Chapter 13 debtor remains in control of the assets of the estate and offers a plan for the payment of allowed claims out of future earnings or other future income and since the trustee's functions are limited under Code § 1302 to administrative functions, in sharp contrast to the wide array of powers and duties available to Chapter 7 and 11 trustees, it is apparent that Congress intended an active role for the Chapter 13 debtor at the functional expense of the Chapter 13 trustee. A Chapter 13 trustee would have little, if any, interest in avoiding a fraudulent transfer of a Chapter 13 debtor's residence. The debtor's interest in that result, however, is obvious. It is unlikely that Congress, intending to permit a Chapter 13 debtor to preserve his home by curing defaults and reinstating mortgages on residential property, *see In re Taddeo,* 685 F.2d 24, 26 (2d Cir.1982), also intended to limit the

authority to avoid the fraudulent transfer of that residence to a trustee who, as noted, has minimal interest in the transfer.

34 B.R. at 655. The *Fisk* court has further suggested that permitting the chapter 13 debtor to pursue an avoidance action to the extent of its claimed exemption indirectly furthers the congressional intent to promote the debtor's fresh start "by increasing the chances that the payments required under the [chapter 13] plan will be met and protecting against a dismissal and the threat of foreclosure." 36 B.R. at 926; *cf. Deel Rent-A-Car, Inc. v. Levine,* 721 F.2d 750, 757 (11th Cir.1983) ("Subsection 522(h) is an integral cog in the new fresh start mechanism embodied in the Code."; chapter 7 debtor has standing under § 522(h) to bring § 547 avoidance action).[4]

Accordingly, this court concludes that the Debtors have standing to maintain this action against Borg-Warner under section 548 and that, having satisfied the requisites of that provision by demonstrating that the property was transferred for less than a reasonably equivalent value within one year before the date the Debtors filed their chapter 13 petition and that the transfer resulted in the Debtors' insolvency, the Debtors may avoid the transfer as a fraudulent conveyance.

### B. *Defenses*

Borg-Warner raises the defenses of res judicata and collateral estoppel, contending that (1) the Debtors should have urged their fraudulent conveyance claim in Borg-Warner's separate action to lift the automatic stay; and (2) the state court judgment awarding Borg-Warner possession of the Property operates as a bar to considering the fraudulent conveyance claim. With regard to Borg-Warner's action for relief from the stay, Borg-Warner further argues that the Debtors' response in that action asserted numerous defenses, including allegations of impropriety in confecting the agreements and in conducting the foreclosure sale, all of which were resolved at the December 8, 1983 hearing and in the bankruptcy court's subsequent order lifting the stay.

In *In re Coleman,* 21 B.R. at 835–36, the court rejected a res judicata defense to a cause of action that allegedly should have been filed as a counterclaim in a suit to terminate an automatic stay. The *Coleman* court's observations are germane to the case at bar given its almost indistinguishable fact situation:

Suits brought pursuant to § 362 are unique in that subsection (e) provides that within 30 days of the date the creditor requests relief the court must conduct a preliminary hearing. If the stay survives the preliminary hearing a final hearing on the termination or modification of the stay must be commenced within 30 days after such preliminary hearing. Rule 4001 of the Interim Bankruptcy Rules, which has been adopted by this court as a local rule, provides that the stay expires within 30 days after the final hearing is commenced unless the court determines that the stay be continued. [In] *In re Born,* 7 B.C.D. 313, 10 B.R. 43 (Bkrtcy.S.D.Tex.1981) this court was faced with a complaint to modify the

---

**4.** Borg-Warner's argument that the majority of the cases hold that a chapter 13 debtor does not have standing to utilize the trustee's avoiding powers under section 548 is simply inaccurate. *See supra.* The authority cited by Borg-Warner does little to undermine a straightforward application of section 522(h) to chapter 13 debtors and, in one instance, confirms the view that avoidance actions would be available to chapter 13 debtors if they but satisfied each of the requisite elements of the statutory scheme. *See In re Echoles,* 21 B.R. 280 (Bankr.D.Ariz.1982) (chapter 13 debtor lacked standing to bring fraudulent transfer challenge because transfer was voluntary; but § 522(h) read together with

§ 548 allows a chapter 13 debtor to avoid transfer when requisites, including involuntariness of transfer, are met). None of the other cases cited by Borg-Warner even discuss the effect of § 522(h) on the chapter 13 debtors' ability to maintain an avoidance action. *See In re Walls,* 17 B.R. 701 (Bankr.S.D.W.Va.1982) (chapter 13 debtor's proposed use of avoiding power should be exercised by chapter 13 trustee conceivably as part of plan); *In re Colandrea,* 17 B.R. 568 (Bankr.D.Md.1982); *In re Phelmetta,* 7 B.R. 461 (Bankr.D.Conn.1980); *In re Carter,* 2 B.R. 321 (Bankr.D.Colo.1980) (chapter 13 debtor has no "strong arm" power to avoid purchase money security interest).

**304**

stay in which two counterclaims were filed. At that time we expressed the view that the time constraints placed on the court when considering an action brought under § 362(d) made it very difficult to consider counterclaims which might arise in the § 362(d) action. Rather we deemed it necessary to sever out any counterclaims or affirmative defenses that might arise. To do otherwise would deprive the secured creditor of the right of adequate protection while the proceedings were pending. Further an action pursuant to § 362(d) does not raise the issue of fraudulent transfer in and of itself. *An action to avoid a fraudulent transfer is simply not a proper issue in a § 362 complaint.* For these reasons this court is not willing to consider res judicata as a defense to the present suit.

*Id.* (emphasis added). These observations find strong support in the legislative history of the automatic stay provision:

The action commenced by the party seeking relief from the stay is referred to as a motion to make it clear that at the expedited hearing under subsection (e), and at hearings on relief from the stay, the only issue will be the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor, which, although relevant to the question of the amount of the debt, concern largely collateral or unrelated matters. This approach is consistent with that taken in cases such as *In re Essex Properties, Ltd.,* 430 F.Supp. 1112 (N.D.Cal.1977), that an action seeking relief from the stay is not the assertion of a claim which would give rise to the right or obligation to assert counterclaims. Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. Rather, they will be the subject of more complete proceedings by the trustee to recover

property of the estate or to object to the allowance of a claim. However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in exercising its discretion. What is precluded is a determination of such collateral claims on the merits at the hearing.

S.Rep. No. 989, 95th Cong., 1st Sess. 55, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5841; *see also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 344 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6300; *Vastola v. Milks,* 14 B.R. 15 (W.D.N.Y.1981); *In re Jackson,* 42 B.R. 76, 81–82 (Bankr.D.D.C.1984) ("[M]atters appropriate for relief from the stay are limited."); *In re Williams,* 18 B.R. 102 (Bankr.D.Vt.1982).

■ Likewise, a claim by the Debtors to avoid a fraudulent transfer could not have properly been urged in Borg-Warner's action for relief from the stay. In addition, as in *In re Jackson,* there is no indication that the fraudulent conveyance claim was raised in the stay proceeding, much less any disposition of the claim. "Hence, one of the essentials for collateral estoppel or law of the case to apply is missing, in that the matter now at issue has not been actually decided in the prior ruling." 42 B.R. at 82 (citing *Stebbins v. Keystone Insurance Co.,* 481 F.2d 501 (D.C.Cir.1973)); *see Castillo v. Railroad Retirement Board,* 725 F.2d 1012 (5th Cir.1984).

■ Borg-Warner's contention that the Debtors' fraudulent conveyance action is precluded by the state court judgment is equally flawed. Borg-Warner brought the action of forcible entry and detainer in the Justice Court of Harris County, Texas, to determine Borg-Warner's right to the possession of the Property. The right to actual possession is the only issue that may be adjudicated in an action for forcible entry and detainer, and the merits of the title shall not be inquired into. *See* Tex.R. Civ.P. 746; *Haith v. Drake,* 596 S.W.2d 194, 196 (Tex.Civ.App.—Houston [1st]

1980, no writ). The action is cumulative of other remedies and not exclusive. *See Haginas v. Malbis Memorial Foundation,* 163 Tex. 274, 354 S.W.2d 368 (1962); *Holcombe v. Lorino,* 124 Tex. 446, 79 S.W.2d 307 (1935). In *Martinez v. Beasley,* 572 S.W.2d 83 (Tex.Civ.App.—Corpus Christi 1978, no writ), the court held that a judgment of possession in a forcible detainer action did not deprive the district court of jurisdiction to hear and determine a subsequent suit between the same parties to cancel the trustee's deed to the property that was the subject of the judgment of possession. The court wrote:

> Thus, a judgment of possession in a forcible detainer action is a determination only of the right to immediate possession of the premises, and does not determine the ultimate rights of the parties to any other issue in controversy relating to the realty in question. Therefore, in this case, plaintiffs have the right to sue in the district court to determine whether the trustee's deed should be cancelled, independent of defendant's award of possession of the premises in the forcible detainer action, which determined the right to immediate possession of the premises, and nothing else. An action in forcible detainer in the justice court is one thing, and an action in the district court to determine whether a trustee's deed to the premises involved in the forcible detainer action should be set aside in [sic] something else.

*Id.* at 85. Similarly, the Debtors here have a right to raise their fraudulent conveyance claim in a section 548 avoidance action in a federal bankruptcy court, independent of Borg-Warner's award of possession of the Property in the forcible detainer action, which determined the right to actual possession of the Property and nothing else.[5]

▮ Borg-Warner also contends that the Debtors voluntarily waived any right they might have had to set aside the foreclosure sale as a fraudulent conveyance by agreeing pursuant to the bankruptcy court's order emanating from the December 8, 1983 hearing to seek adjudication of their respective property interests, if any, in the state courts. Borg-Warner further argues that the order was not limited to the then pending forcible entry and detainer action but included the adjudication of any interest, whether it be possession or title, in the subject property.

This contention simply misapprehends the scope of the bankruptcy court's order lifting the stay. The order, on its face, provides only that the automatic stay was "lifted to the extent [Borg-Warner and the Debtors] may seek adjudication of their respective interests in the real property located at 5739 Lakefield, Houston, Harris County, Texas, in the courts of the State of Texas; subject, however, to the approval of this court in any final disposition of the property."

It is clear beyond peradventure that the order lifted the stay to allow the parties to pursue their interests in a state forum should they choose to do so. There is nothing in the plain language of this order to indicate that the parties agreed or the court required that they pursue their interests only in a state forum. The language of the order is clearly permissive, not mandatory. Therefore, the order cannot be read to preclude the Debtors from pursuing a fraudulent conveyance action under section 548.

## III.

## CONCLUSION

Having determined that the chapter 13 Debtors have standing to commence and maintain this section 548 avoidance action, that the Property was transferred for less than a reasonably equivalent value within one year before the date of filing the petition, and that the Debtors were made insolvent by the transfer, this court concludes

---

5. *See also McCloud v. Knapp,* 507 S.W.2d 644 (Tex.Civ.App.—Dallas 1974, no writ) (judgment of justice court granting landlord possession in forcible detainer action was not res judicata of tenant's suit for judgment declaring her rights to enforce oral contract for lifetime tenancy of property and, alternatively, for damages); Tex. Rev.Civ.Stat.Ann. art. 2226a (Vernon 1971).

**306**

that the Debtors may avoid the transfer under section 548 as a fraudulent conveyance. Moreover, neither the judgment of possession favoring Borg-Warner in its forcible entry and detainer action nor the bankruptcy court's grant of relief from the stay act to preclude the Debtors' right to bring the action for fraudulent conveyance. Finally, the order lifting the stay does not reflect the parties' agreement or the court's determination that subsequent claims had to be litigated in a state forum. Therefore, because there is no genuine issue as to any material fact, this court concludes that the Debtors are entitled to judgment as a matter of law on their claim to avoid the foreclosure sale as a fraudulent conveyance. Fed.R.Civ.P. 56. Accordingly, Borg-Warner's motion for summary judgment is DENIED and the Debtors' motion for summary judgment is GRANTED.